STATE OF HAWAII, Plaintiff-Appellee, *v.* MICHAEL A. VANCE, Defendant-Appellant

NO. 6078

STATE OF HAWAII, Plaintiff-Appellee, *v.* JOHN RAY VANCE, Defendant-Appellant

NO. 6079

NOVEMBER 13, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
AND RETIRED JUSTICES MARUMOTO AND KOBAYASHI,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

This is an appeal from the judgments entered by the trial court finding defendant-appellant John Ray Vance and his brother, defendant-appellant Michael A. Vance, guilty of promoting a dangerous drug in the third degree. John Vance was convicted for possessing cocaine and Michael Vance was convicted for possessing secobarbital. In each case, the dangerous drug was discovered in the course of a pre-incarceration search conducted by the police. The appellants' cases were consolidated for trial and are brought together on appeal.

The appellants allege that numerous errors were committed by the court below, each of which requires the reversal of the judgments of conviction. We have carefully reviewed the record and for the reasons hereinafter stated, we affirm.

John Ray Vance was initially arrested on July 30, 1975 for the offense of assault in the third degree. He was arrested by Officer Dennis Bernard after the officer, while standing a few feet away, witnessed the appellant knock a fellow policeman unconscious.

After his arrest, the appellant was transported to the police station. He arrived in a stupor and appeared intoxicated or high on drugs. When the police attempted to book him, he was belligerent and uncooperative. The standard operating procedure at the stationhouse in such a situation is to place the arrested person in a cell until he has calmed down sufficiently to complete the booking procedures. Therefore, John Vance was taken to the cellblock and, at approximately 3:13 a.m., he was searched for weapons and contraband prior to being placed in the cell. Recovered from the appellant's right front pants pocket during this search were a small bottle containing a white powder with a silver spoon-like object attached to it and a glass vial containing a white powder residue. Believing the white powder to be narcotics, the police officer who conducted the search placed the appellant under arrest for promoting a dangerous drug in the third degree.

Later that same morning, at approximately 3:53 a.m., Michael Vance, brother of John, accompanied by their mother, Mrs. Virginia Vance, came to the police station to post bail for John. While waiting, Michael began pounding the counter and shouting threatening obscenities at the police. Ignoring several warnings to keep quiet, he continued his disruptive behavior for approximately ten minutes. At this point, Officer Guy Takiguchi with the assistance of two other officers arrested Michael for disorderly conduct. Michael resisted and had to be subdued by the arresting officers. Thereafter, he was brought into the receiving desk area where he was searched. In the process of conducting this search, Officer Takiguchi reached into Michael's top left shirt pocket and recovered a transparent plastic packet containing three white tablets. The packet and its contents were confiscated and Michael was placed under arrest for promoting a dangerous drug in the third degree. The appellant was then booked and incarcerated.

Prior to Michael's arrest, Mrs. Vance offered to pay the required bail to procure John's release. When Michael was arrested, Mrs. Vance likewise offered to post bail for him. In

both instances, the police did not immediately accept her offers and admit her sons to bail.

The issues raised by this appeal warranting our consideration are as follows:

1. Whether there existed probable cause sufficient to justify the initial warrantless arrest of each appellant.

2. Whether the search of Michael's person resulting in the recovery of the dangerous drug secobarbital was a valid pre-incarceration search.

3. Whether the prosecution established a chain of custody of the substances seized from the appellants sufficient to allow their introduction into evidence.

4. Whether the prosecution must prove that the appellants possessed a usable amount of the drugs or quantities capable of producing a narcotic effect to sustain a conviction for promoting a dangerous drug in the third degree under HRS § 712-1243.

We have considered the other issues raised by the appellants and find them to be without merit.

The appellants first contend that there was no probable cause for their initial arrests. Absent probable cause, they argue, their warrantless arrests were unlawful and, therefore, it was error for the trial court to deny their motion to suppress the fruits of the searches that followed.

It is well established that an arrest without a warrant must be based on probable cause. *State v. Barnes,* 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Delmondo,* 54 Haw. 552, 512 P.2d 551 (1973). In *State v. Barnes, supra,* we stated the test of probable cause as follows:

Probable cause exists when the facts and circumstances known to the officer, or of which he had reasonably trustworthy information, would warrant a man of reasonable caution to believe that the person arrested has committed or is committing an offense.

58 Haw. at 335.

Beginning with the case of John Vance, Officer Bernard initially arrested the appellant on a charge of assault in the

third degree, a misdemeanor or petty misdemeanor offense.[1] In *House v. Ane*, 56 Haw. 383, 538 P.2d 320 (1975), we held that a misdemeanor arrest by a police officer without a warrant is lawful if the officer has probable cause to believe an offense is being committed in his presence. *See also Kimball v. Sadaoka*, 56 Haw. 675, 678 n. 3, 548 P.2d 268, 271 n. 3 (1976). The requisite probable cause must be based on the officer's personal knowledge acquired at the time through his senses or inferences properly drawn from such knowledge. *House v. Ane, supra.*

The record below reveals that Officer Bernard, while standing a few feet away, witnessed John Vance turn and strike a fellow police officer unconscious. Having observed this conduct, Officer Bernard immediately arrested the appellant for assault. We therefore conclude that there was probable cause to believe that John Vance had committed the offense for which he was arrested and that the arrest was valid.

Similarly, we conclude that the record below supports the existence of probable cause to justify the initial arrest of Michael Vance. Officer Takiguchi testified that the appellant, while waiting to bail out his brother, pounded on the counter and yelled at the police saying, "F——— cops. You're going to get yours." He ignored repeated warnings by the police to keep quiet. After these warnings, his mother tried to calm him down but was unsuccessful. Michael continued shouting "F——— cops are punks. You just wait."

At the time, Michael was standing near a window where the police transact business with the public. Five or six other people were then outside the receiving desk. The disruptive

---

[1] The offense of assault in the third degree is defined in HRS § 707-712, in pertinent part, as follows:

(1) A person commits the offense of assault in the third degree if he:
(a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or

\* \* \* \* \*

(2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

conduct had continued for ten minutes before Officer Takiguchi finally arrested Michael for disorderly conduct.[2]

The appellants contend that the police lacked probable cause to arrest Michael for disorderly conduct because the testimony presented failed to indicate that Michael's conduct created a risk of *physical* inconvenience to members of the public or that his speech was "likely to provoke a violent response," essential elements of the offense charged.[3] *See State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977).

We note at the outset that the validity of Michael's arrest does not turn on whether the evidence in the record would sustain the charge of disorderly conduct. Actual guilt is not the test of probable cause for an arrest without a warrant. *State v. Pokini,* 45 Haw. 295, 312, 367 P.2d 499, 508 (1961).

---

[2] The offense of disorderly conduct is defined by HRS § 711-1101, in pertinent part, as follows:

   (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:

   \*   \*   \*   \*   \*

   (b) Makes unreasonable noise; or

   (c) Makes any offensively coarse utterance, gesture or display, or addresses abusive language to any person present, which is likely to provoke a violent response; or

   \*   \*   \*   \*   \*

   (3) Disorderly conduct is a petty misdemeanor if . . . [the defendant] . . . persist[s] in disorderly conduct after reasonable warning or request to desist. . . .

[3] Although not definitive of legislative intent, the Commentary to HRS § 711-1101 sheds some light in the proper interpretation of the statutory provision. It explicitly states:

   A person may not be arrested for disorderly conduct as a result of activity which annoys only the police. . . . Policemen are trained and employed to bear the burden of hazardous situations, and it is not infrequent that private citizens have arguments with them. Short of conduct which causes "physical inconvenience or alarm to a member or members of the public" arguments with the police are merely hazards of the trade, which do not warrant criminal penalties.

Thus, it is questionable whether the charge of disorderly conduct was appropriate in the case of Michael's arrest. The Commentary notes, however, in a significant footnote, that "[a]n individual policeman may . . . be the object of harassment under § 711-1106."

More importantly, however, we find that the initial arrest of Michael may be upheld without necessarily establishing probable cause to arrest for the offense of disorderly conduct.

In *State v. Kimball*, 54 Haw. 83, 503 P.2d 176 (1972), we held that a warrantless arrest is not rendered invalid by the fact that the arresting officer had a pre-empted ordinance in mind rather than a state statute with similar provisions, if the facts known to the arresting officer also constituted probable cause to arrest under the statute. We stated, "The point of importance is that the facts and circumstances within the officer's knowledge afforded probable cause to arrest under either the ordinance or the statute." 54 Haw. at 87. Thus, even if the testimony presented did not demonstrate probable cause to arrest the appellant for disorderly conduct, if probable cause was present in regard to a different though closely related offense, the arrest would be valid.

In the instant case, we find that Michael's repeated threatening and offensive remarks unquestionably afforded the police probable cause to arrest him for the offense of harassment.[4] A person commits the offense of harassment if with intent to annoy or alarm another person he makes repeated communications in offensively coarse language. It is important to note that, as in *State v. Kimball, supra,* the offense mistakenly charged and the offense warranted by the appellant's behavior are closely related. Previous Hawaii law treated various forms of harassment as disorderly conduct. *See* Commentary on HRS § 711-1106. Not until 1972 did the Legislature separate the two offenses. *See* Act 9, SLH 1972, §§ 1101 and 1106.

---

[4] The offense of harassment is defined by HRS § 711-1106, in relevant part, as follows:

> (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, he:

> \* \* \* \* \*

> (b) Insults, taunts, or challenges another person in a manner likely to provoke a violent response; or

> \* \* \* \* \*

> (d) Makes repeated communications . . . in offensively coarse language.

The purpose of requiring probable cause prior to the execution of a warrantless arrest is twofold: 1) to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime and 2) to give the police fair leeway for enforcing the law in the community's protection. *Brinegar v. United States*, 338 U.S. 160, 176 (1949). This purpose is furthered by upholding the validity of an arrest without a warrant where, as here, the police clearly had probable cause to arrest the defendant under a specific statutory provision although technically naming a different but closely related one. We, therefore, find that probable cause existed to support the warrantless arrest of Michael Vance and that his arrest was also valid.

Given the lawfulness of his initial arrest, appellant Michael Vance nevertheless maintains that his motion to suppress should have been granted on the ground that the warrantless pre-incarceration search following his arrest was without justification and constitutionally impermissible because of his right to be released on bail.[5] In the case at hand, Mrs. Vance testified that as soon as Michael was arrested she offered the necessary bail to procure his release.[6] The

---

[5] In the appellants' brief, this contention was raised on behalf of both brothers. We find, however, that in the case of John Vance, the facts fail to support the appellants' argument. That argument is based on the premise that Mrs. Vance *offered to pay the required bail for her sons, John and Michael, before the searches in* question were conducted. With regard to John, there is substantial evidence indicating otherwise. Officer Chun testified that he conducted the pre-incarceration search of John at approximately 3:13 a.m. on July 30, 1975. According to the testimony of Officer Takiguchi, Mrs. Vance did not arrive at the police station until 3:53 a.m. of the same day. Thus, the trial court could have reasonably concluded that the disputed search had been completed before bail was offered. Therefore, we proceed to consider the question solely with regard to Michael.

[6] We note here that the record below contains a finding of fact by the trial judge unsupported by the testimony presented. At the hearing to consider the appellants' motion to reconsider order denying motion to suppress, the following statements were made:

MR. TURK: Well, first taking Michael's case, I think it's clear that there was no need for a pre-incarceration search when his mother was right there to bail him out. There was never any fear of incarceration, or any thought of it.

THE COURT: Well, the point is this, Mr. Turk: We have direct conflicting testimony, isn't that right?

appellant contends that where, as here, a person is arrested for a petty misdemeanor or misdemeanor offense and he, or someone on his behalf, offers to pay the required bail amount, that person has the right to immediate release and to avoid incarceration entirely. Without lawful authority to incarcerate, he argues, the accepted justifications for a pre-incarceration search — to prevent the entry into the jail of weapons and other contraband and to inventory the arrestee's belongings — are no longer applicable.[7] Hence, a pre-incarceration search conducted under these circumstances is unreasonable and in violation of Article I, Section 5 of the Hawaii Constitution.[8] Michael Vance therefore contends that the evidence used to secure his conviction was illegally seized and should have been suppressed.

Although appellant failed to cite any cases in support of his contention, we are aware that courts in other jurisdictions have held that a pre-incarceration search is not proper if upon posting collateral the arrested person has a right to release

---

MR. TURK: No, there is no conflict as to when —

THE COURT: Well, if I recall, the officer testified the other time that there wasn't any mention of bail. It was after he made the search.

MR. TURK: No, your Honor. . . .

THE COURT: If I recall, he (Officer Takiguchi) said the offer of bail was made after the search.

MR. TURK: Well, your Honor, I ordered a transcript of the proceedings. Rather than leaf through it, I'll be glad to submit it for the Court's perusal.

THE COURT: Well, that's the Court's recollection, anyway.

(Transcript at 74-75).

A careful review of the record reveals no testimony by Officer Takiguchi or any other witness supporting the trial judge's conclusion. In the absence of specific findings by the trial court, we cannot discern whether the trial judge relied upon this erroneous conclusion in denying the appellant's motion to suppress. We have, therefore, reviewed the case without relying upon the trial judge's mistaken recollection and find that the pre-incarceration search of Michael Vance may be upheld on other grounds. The erroneous statement cited above thus constitutes harmless error and is not grounds for reversal.

[7] We recognized these justifications for a pre-incarceration search in our decision in State v. Kaluna, 55 Haw. 361, 520 P.2d 51 (1974).

[8] Article I, Section 5 of the Hawaii Constitution protects "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy."

without any incarceration. *See Zehrung v. State,* 569 P.2d 189 (Alaska 1977) (decision modified on rehearing in *Zehrung v. State,* 573 P.2d 858 (Alaska 1978) ); *United States v. Mills,* 153 U.S. App. D.C. 156, 472 F.2d 1231 (1972); *People v. Dixon,* 392 Mich. 691, 222 N.W.2d 749 (1974); *State v. Gwinn,* 12 Or. App. 444, 506 P.2d 187 (1973); *People v. Overlee,* 174 Colo. 202, 483 P.2d 222 (1971); *People v. Mercurio,* 10 Cal. App.3d 426, 88 Cal. Rptr. 750 (1970); *Carpio v. Superior Court, County of Santa Barbara,* 19 Cal. App.3d 790, 97 Cal. Rptr. 186 (1971).

While we may agree with the principle embodied in these decisions that where there is no intent or justification to incarcerate, a pre-incarceration search is impermissible, this was not the situation in the case at hand. Here, the police demonstrated an intent to and did in fact incarcerate the appellant following the inventory search. Moreover, in the case before us, the appellant's incarceration was justified by his threatening and disruptive conduct in the stationhouse. In *United States v. Mills, supra,* the Court stated that "when circumstances justify stationhouse detention, there is reason for some search of the person involved." 472 F.2d at 1239. *Cf. Zehrung v. State,* 573 P.2d 858 (Alaska 1978).

Furthermore, we find that the police had the authority to incarcerate under the limited circumstances of this case notwithstanding the appellant's contention that he had a right to immediate release upon his mother's offer of bail. Section 804-4 of the Hawaii Revised Statutes provides that where an arrested person has been charged for an offense other than one punishable by life imprisonment not subject to parole, "the defendant may be admitted to bail before conviction as a matter of right." The Hawaii Revised Statutes, however, do not set forth specifically the time at which the right to bail attaches in the case of a petty misdemeanor or misdemeanor arrest. To answer this question, we must turn to the Hawaii Rules of Criminal Procedure in effect at the time of appellant's arrest. Rule 5(a) (2) of HRCrP (1960) states, in relevant part, as follows:

> Any person or officer who shall arrest a person without a warrant . . . shall, except where and to the extent the

detention of the arrested person is authorized by law, take the arrested person *without unnecessary delay* before the magistrate having jurisdiction, or, for the purpose of admission to bail, before any judge, other magistrate or officer authorized by law to admit the accused person to bail. (Emphasis added).

It is undisputed in the present case that the police at the stationhouse were authorized to admit Michael Vance to bail.[9] Thus, the question posed is whether the arresting officers complied with Rule 5(a) (2) which requires that, after an arrest, admission to bail shall be without unnecessary delay.

The phrase "without unnecessary delay" is also utilized in Rule 5(a) of the Federal Rules of Criminal Procedure from which our rule was in part derived. Federal cases indicate that the determination of "unnecessary delay" requires consideration of all the facts and circumstances of the case; no rigid, all-encompassing formula may be applied. *See United States v. Carney,* 328 F.Supp. 948 (D.C. Del. 1971); *Romero v. United States,* 408 F.2d 364 (9th Cir. 1969); 1 Orfield, Criminal Procedure under the Federal Rules § 5:50 (1966). We find that the term "unnecessary delay" in Rule 5(a) (2) of the Hawaii Rules of Criminal Procedure should be similarly construed.[10]

---

[9] Pursuant to HRS § 804-5, the Chief of Police or any person named by him has the authority to admit an accused to bail in cases where the punishment for the offense charged may not exceed two years of imprisonment. Michael was arrested for a petty misdemeanor offense carrying a maximum penalty of less than one year of imprisonment.

[10] The current Rule 5(a) of the Hawaii Rules of Penal Procedure (1977) substitutes the word "promptly" for the phrase "without unnecessary delay." On the effect of the word change, the Committee on Revision of the Rules of Criminal Procedure, Judicial Council of Hawaii, stated in their final draft of the new rules as follows:

It should be noted that HRCrP 5(a) uses the phrase "without unnecessary delay" while the proposed Section (a) uses the word "promptly" to describe the speed with which the defendant should be brought before the court. There is no thought to change any meaning content in making this change . . . The only reason for it is that the word "promptly" is used in HRCrP 9(c) (1) and its counterpart proposed Rule 9(c) (3) (i) in describing the speed with which a defendant arrested on a warrant is said to be taken before the court, and it is thought that consistency in the use of words is advisable.

Proposed draft submitted in June, 1975. Thus, our interpretation of the term "without unnecessary delay" may be applied to the term "promptly" in the current version of Rule 5(a).

In *State v. Burnett*, 429 S.W.2d 239, 243 (Mo. 1968), the Supreme Court of Missouri recognized a number of different factors that would be relevant in determining whether an officer had failed in his duty to admit an arrested person to bail. Quoting its decision in *Harbison v. Chicago*, 327 Mo. 440, 37 S.W.2d 609 (1931), the Court stated:

> [W]e do not hold that every time an officer made an arrest it was his duty immediately to take the prisoner before the proper officer for the purpose of giving bond, regardless of the circumstances surrounding the arrest. The time of day or night the arrest was made, *the condition of the prisoner*, his ability and readiness to give a sufficient bond, and other circumstances, not necessary to mention here, are all determinative factors. Each individual case must stand on its own facts. (Emphasis added).

429 S.W.2d at 243. Thus, the physical condition or conduct of the person arrested has been recognized as a legitimate justification for delaying admission to bail. *See also Sheffield v. Reece*, 201 Miss. 133, 28 So.2d 745 (1947) (the detention of a person in an intoxicated state could not become unreasonable until the arrested individual had regained a degree of sobriety which would guarantee against rearrest); Annot., Delay in Taking before Magistrate or Denial of Opportunity to Give Bail as Supporting Action for False Imprisonment, 98 A.L.R.2d § 27 (1964); 1 Wright, Federal Practice and Procedure Criminal § 74 (1969).

In the case at hand, the appellant was arrested for creating a disturbance in the stationhouse. He was hostile and threatening and refused to heed repeated warnings by the police to quiet down. Three officers were required to arrest and subdue him. Based on the facts in the record, the trial court could have reasonably concluded that the delay in admitting Michael to bail and his temporary incarceration were necessary to calm him down and to prevent him from immediately reinstigating his harassment. Furthermore, contrary to the appellant's proposition, our interpretation of Rule 5(a) (2), HRCrP, permits such a delay in releasing an arrested

person on bail where, as here, it is justified by all the facts and circumstances of the case.[11]

We, therefore, conclude that the police did not violate the appellant's right to bail and that the incarceration of the appellant was authorized.[12] Having found the incarceration of the appellant lawful, we thereby find the pre-incarceration search conducted by the police valid and find the admission into evidence of the fruits of such search without error.

The appellants next contend that the lower court erred in admitting into evidence prosecution exhibit 1, the cocaine seized from John Vance, and prosecution exhibit 2, the secobarbital seized from Michael Vance, where there had been no showing of the chain of custody from the time the evidence was received by the police chemists until the time it was received in evidence at trial. We find that the evidence was properly admitted.

In *State v. Olivera*, 57 Haw. 339, 344, 555 P.2d 1199, 1202 (1976), we noted that where an exhibit is a drug or chemical in the form of a powder or liquid which is readily susceptible of adulteration or substitution, courts tend to be strict in requiring that a chain of custody be established which minimizes the possibility of any tampering with the exhibit. The settled rule in other jurisdictions is that "a foundation must be laid connecting the exhibit with the defendant and showing the continuous whereabouts of the exhibit from the time it came into the possession of the police until it was laboratory tested. The purpose of the rule is to avoid any claim of substitution,

---

[11] We note that a delay will be found necessary only upon clear justification; the defendant's right to freedom from unreasonable searches and seizures prohibits such delays as a pretext to unjustified pre-incarceration searches.

[12] No allegation was raised below that the detention of the appellant exceeded the forty-eight hour limit set by HRS § 803-9. The statutory provision states in relevant part as follows:

It shall be unlawful in any case of arrest for examination:

\*   \*   \*   \*   \*

(5) To fail within forty-eight hours of the arrest of a person on suspicion of having committed a crime either to release or to charge the arrested person with a crime and take him before a qualified magistrate for examination.

tampering or mistake." *Jones v. State,* 260 Ind. 463, 296 N.E.2d 407, 409 (1973); *see also Phillips v. State,* _____ Ind. App. _____, 386 N.E.2d 704, 706 (1979); *People v. Lamb,* 24 Cal. App.3d 378, 101 Cal. Rptr. 25 (1972). Establishing the chain of custody is essential to show that the substance analyzed was the substance seized from the defendant. *State v. Belote,* 213 Kan. 291, 516 P.2d 159, 161 (1973). After chemical analysis, however, the substance itself is not vital evidence. *State v. White,* 213 Kan. 276, 515 P.2d 1081, 1084 (1973); *People v. Lamb, supra,* 101 Cal. Rptr. 25, 28 (1972). Therefore, proof of chain of custody of the substance during the period after analysis until introduction into evidence at trial is not required absent a specific allegation of tampering.

Furthermore, we stated in *State v. Olivera, supra,* that it is not necessary to negate all possibilities of tampering with an exhibit. It is sufficient to establish that it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence. *See also Williams v. State,* _____ Ind. _____, 387 N.E.2d 1317, 1319 (1979); *State v. Thibodeau,* 353 A.2d 595, 603 (Me. 1976).

In the instant case, the uncontradicted testimony of the police officers and crime lab analysts established the chain of custody of the evidence from the time the items were recovered by the police to the time the substances were tested. Moreover, the appellants have made no allegation of alteration or substitution.

We find, therefore, that the admission into evidence of prosecution exhibits 1 and 2 was not in error.

The last issue we consider is whether in a prosecution for promoting a dangerous drug in the third degree, the State must prove that the appellants possessed an amount of the drugs usable for sale or consumption or a quantity capable of producing a narcotic effect.[13] In the present case, appellant John Vance was found in possession of .7584 gram of white powder analyzed to contain approximately 17.5 percent

---

[13] In State v. Chong, 52 Haw. 226, 234, 473 P.2d 567, 572 (1970), we declined to consider this issue on the ground that the defendant did not raise the point at trial.

cocaine or a total of .1327 gram of the narcotic drug. Appellant Michael Vance was found in possession of three tablets identified as the dangerous drug secobarbital. The appellants allege that their motion for judgment of acquittal should have been granted on the ground that a conviction for promoting dangerous drugs in the third degree may not be sustained without proof of narcotic potential or an amount usable for sale or consumption and that the prosecution failed to proffer such evidence.

In support of their contention, the appellants cite cases from several jurisdictions in which courts have inferred a usable quantity standard in laws making criminal the possession of "a" or "any" narcotic drug. *People v. Leal*, 64 Cal.2d 504, 50 Cal. Rptr. 777, 413 P.2d 665 (1966); *People v. Johnson*, 5 Cal. App.3d 844, 85 Cal. Rptr. 238 (1970); *Beutler v. State*, 88 Nev. 707, 504 P.2d 699 (1972); *see also State v. Moreno*, 92 Ariz. 116, 374 P.2d 872 (1962); *Edelin v. United States*, 227 A.2d 395 (D.C. App. 1967); *Watson v. State*, 88 Nev. 196, 495 P.2d 365 (1972); *Pelham v. State*, 164 Tex. Crim. 226, 298 S.W.2d 171 (1957). These cases involved statutes that were silent as to quantity of drug necessary to constitute a violation. In *People v. Leal, supra,* for example, the Supreme Court of California held that possession of useless traces of a narcotic does not constitute a criminal act within the meaning of Health and Safety Code § 11500. That provision prescribed heavy penalties for "every person who possesses any narcotic other than marijuana;" it did not expressly specify the amount necessary to be punishable under the statute.

We are also aware that courts in at least an equal number of jurisdictions have followed a different line of interpretation. These courts have interpreted similar statutory provisions to prohibit the possession of any identifiable quantity of the narcotic drug. *See Schenher v. State*, 38 Ala. App. 573, 90 So.2d 234 (1956); *Judd v. State*, 482 P.2d 273 (Alaska 1971); *Duran v. People*, 145 Colo. 563, 360 P.2d 132 (1961); *State v. Eckroth*, 238 So.2d 75 (Fla. 1970); *Peachie v. State*, 203 Md. 239, 100 A.2d 1 (Ct. App. 1953); *People v. Harrington*, 396 Mich. 33, 238 N.W.2d 20 (1976); *State v. Young*, 427 S.W.2d 510 (Mo. 1968); *State v. McDonald*, 92 N.J. Super. 448, 224

A.2d 18 (1966); *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872 (1964); *State v. Larkins*, 79 Wash.2d 392, 486 P.2d 95 (1971); *State v. Dodd*, 28 Wis.2d 643, 137 N.W.2d 465 (1965); *State v. Forrester*, 29 Or. App. 409, 564 P.2d 289 (1977). The rationale for these decisions is that statutes regulating possession of narcotic drugs are designed to prohibit the illegal possession of any amount of such drugs, and that, in the absence of a specific statutory provision, a usable. quantity standard should not be implied. *State v. Larkins, supra; State v. Forrester, supra*.

Unlike the statutes considered in the cases cited above, HRS § 712-1243 directly addresses the issue of the amount of a dangerous drug necessary to constitute an offense under the statute. HRS § 712-1243 states in full as follows:

(1) A person commits the offense of promoting a dangerous drug in the third degree if he knowingly possesses any dangerous drug *in any amount*.

(2) Promoting a dangerous drug in the third degree is a class C felony.

(Emphasis added). ·

Moreover, it is important to note that HRS § 712-1243 is part of a statutory scheme designed to provide more severe punishment for possession of greater quantities of drugs.[14] For example, possession of one-eighth ounce or more of cocaine is punishable as a class B felony under HRS § 712-1242, "Promoting a Dangerous Drug in the Second Degree," and possession of one ounce or more of the same drug is punishable as a class A felony under HRS § 712-1241, "Promoting a Dangerous Drug in the First Degree."

The statutory design indicates that the Legislature not only carefully considered the precise amount of a drug that need be possessed to constitute an offense under the relevant

---

[14] The Commentary on § 712-1241 to 1250 states in pertinent part as follows: It is the purpose of the Code to hit hardest at the illegal trafficker in dangerous drugs, harmful drugs, and detrimental drugs. The scheme devised for so doing is to arrange the sanctions relating to each substance, either for possession or distributing, on the basis of the amounts involved. Such amounts are meant to reflect, i.e., provide an indicia of the position of the defendant in the illegal drug traffic.

statute but that they devised their entire scheme of sanctions on the basis of the amounts involved. Thus, the direct and unambiguous language of our statute prohibits us from judicially amending the provision to include a usable quantity standard.

We, therefore, conclude that under HRS § 712-1243 the State must prove only the knowing possession of a dangerous drug in any amount and that the conviction of John Vance for the possession of .1327 gram of cocaine and the conviction of Michael Vance for the possession of three tablets of secobarbital were not in error.

We mention in passing, however, that where a literal application of HRS § 712-1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702-236, "De minimus infractions" may be applicable to mitigate this result. HRS § 702-236 provides that the court may dismiss a prosecution if, considering all the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction.

The evil sought to be controlled by the statutes mentioned above is the use of narcotic drugs and their sale or transfer for ultimate use. Where the amount of narcotics possessed is an amount which can be used as a narcotic, the probability of use is very high and the protection of society demands that the possession be proscribed. However, where the amount is microscopic or is infinitesimal and in fact unusable as a narcotic, the possibility of unlawful sale or use does not exist, and proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control. Thus, the possession of a microscopic amount in combination with other factors indicating an inability to use or sell the narcotic, may constitute a de minimus infraction within the meaning of HRS § 702-236 and, therefore, warrant dismissal of the charge otherwise sustainable under HRS § 712-1243.

In the cases at bar, the possession of .7584 gram of white powder containing cocaine and the possession of three tablets

of secobarbital by the appellants does not call into play the application of HRS § 702-236. We, therefore, affirm the convictions below.