STATE OF HAWAI`I, Plaintiff-Appellee,
v.
CLYDE BRUCE MOONEY, Defendant-Appellant.
No. 28352.
Intermediate Court of Appeals of Hawaii.
February 26, 2008.
On the briefs:
Harrison L. Kiehm, for Defendant-Appellant.
Renee Ishikawa Delizo, Deputy Prosecuting Attorney, County of Maui, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
By: RECKTENWALD, C.J., FOLEY and NAKAMURA, JJ.
Defendant-Appellant Clyde Bruce Mooney (Mooney) appeals from the Judgment filed on June 7, 2006, in the District Court of the Second Circuit, Wailuku Division (district court).[1] The district court convicted Mooney of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Hawaii Revised Statutes (HRS) § 291E-61 (Supp. 2004)[2]; disregarding longitudinal lane markings, in violation of HRS § 291C-38 (2007 Repl.);[3] and noncompliance with speed limit, in violation of HRS § 291C-102(b) (Supp. 2005).[4] The district court revoked Mooney's driver's license for 90 days and ordered Mooney to pay a $500 fine and various fees, among other penalties.
On appeal, Mooney argues that his counsel, Deputy Public Defender Ison (Ison), provided him with ineffective assistance of counsel because Ison
(1) failed to object to Maui Police Department (MPD) Officer Hada's inadmissable testimony regarding the horizontal gaze nystagmus (HGN) test[5] results and Officer Hada's grading of the non-HGN Field Sobriety Maneuver (FSM) results;
(2) failed to object to Dr. Wong's inadmissable testimony, which basically told the trier of fact what to conclude; and
(3) stipulated to the chain of custody and integrity of Mooney's urine specimen, which contradicted Mooney's own testimony that the specimen may have been tampered with.
Mooney adds that even if Ison's alleged errors did not rise to the level of ineffective assistance of counsel individually, the cumulative effect of those errors did so.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Mooney's points of error as follows:
(1) Ison's failure to object to Officer Hada's testifying about the HGN test did not rise to the level of ineffective assistance because the error could not have resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. State v. Wakisaka, 102 Hawaii 504, 513-14, 78 P.3d 317, 326-27 (2003); State v. Ferrer, 95 Hawaii 409, 412-14 & 422-25, 23 P.3d 744, 747-49 & 757-60 (App. 2001).
(2) Ison did not commit ineffective assistance of counsel by failing to object to Officer Hada's testimony regarding the non-HGN FSMs he conducted. Officer Hada was permitted to testify about his observations regarding the "oneleg-stand" test, pursuant to Ferrer, 95 Hawaii at 427, 23 P.3d at 762. He was also permitted to render his lay opinion as to whether Mooney was intoxicated or impaired based on his observations. Id.
(3) Ison did not ineffectively assist Mooney by failing to object to Dr. Wong's testimony because the testimony was admissible. Hawaii Rules of Evidence Rule (HRE) 704; "Commentary" to HRE Rule 704; see HRS § 291E-61.
(4) Ison did not ineffectively assist Mooney by stipulating to the chain of custody and integrity of Mooney's urine specimen. Mooney did not satisfy his burden of showing that Ison's failure to object to the introduction of State's Exhibit 3 resulted in the withdrawal or substantial impairment of a potentially meritorious defense. See State v. Vance, 61 Haw. 291, 303-04, 602 P.2d 933, 942 (1979); State v. Keaweehu, 110 Hawaii 129, 138, 129 P.3d 1157, 1166 (App. 2006).
Therefore,
IT IS HEREBY ORDERED that the Judgment filed on June 7, 2006 in the District Court of the Second Circuit, Wailuku Division, is affirmed.
NOTES
[1] The Honorable Reinette W. Cooper presided.
[2] HRS § 291E-61 (Supp. 2004) provides in relevant part:

§291E-61 Operating a vehicle under the influence of an intoxicant. (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
....
(2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner[.]
....
(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
(1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E-4(a):
(A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court;
(B) Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to and to participate in substance abuse treatment programs;
(C) Any one or more of the following:
(ii) Not less than forty-eight hours and not more than five days of imprisonment; or
(iii) A fine of not less than $150 but not more than $1,000; and
(D) A surcharge of $25 to be deposited into the neurotrauma special fund[.]
[3] HRS § 291C-38 (2007 Repl.) provides:

§291C-38 Longitudinal traffic lane markings. (a) Traffic lane markings shall be yellow, white or red in color.
(b) Lane markings shall conform to the following concepts:
(1) White lines indicate the separation of lanes of traffic flowing in the same direction.
....
(c) Longitudinal traffic lane markings shall have the following applications:
(3) A solid white line is used to indicate the edge of the traffic lane where travel in the same direction is permitted on both sides of the line but where movement from lane to lane is considered to be hazardous. A solid white line may be crossed only in unusual circumstances and then only with great care. A double width solid white line is used to emphasize a greater degree of hazard.
[4] HRS § 291C-102(b) (Supp. 2005) provides: "The director of transportation with respect to the highways under the director's jurisdiction may place signs establishing maximum speed limits . . Such signs shall be official signs and no person shall drive a vehicle at a speed greater than a maximum speed limit . . . stated on such signs."
[5] Officer Hada testified that HGN tests for "an involuntary jerking of your eyes." Officer Hada explained that he conducted the HGN on Mooney by first positioning his finger (the stimulus) 12 to 15 inches in front of Mooney's face and moving the stimulus from side to side, to determine if Mooney's eyes smoothly tracked it. Second, Officer Hada dragged the stimulus from a position in front of Mooney's face "to a 45-degree angle," to see if Mooney's eyes jerked. Last, the officer tracked his stimulus slowly out to a 45-degree angle to see if Mooney showed any sign of nystagmus before the officer was done tracking the stimulus. Officer Hada testified that HGN would reliably indicate whether a person had consumed alcohol in excess or had taken certain types of drugs.