**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000419
16-JUN-2023
07:57 AM
Dkt. 32 SO**

NO. CAAP-21-0000419

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant, v.
DEAN ROSS DEGUERRA, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-19-0001589)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, and Leonard and Wadsworth, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the June 18, 2021 "Findings of Fact; Conclusions of Law and Order Granting Defendant[-Appellee Dean Ross Deguerra's (**Deguerra**)] Motion to Dismiss For De Minimis Violation Filed on January 29, 2021" (**FOFs/COLs/Order**), entered in the Circuit Court of the First Circuit (**Circuit Court**).[1] For the reasons explained below, we affirm.

The following findings of fact by the Circuit Court are unchallenged on appeal and thus binding on the parties and this court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019): On April 13, 2019, at approximately 9:23 a.m., Honolulu Police Department (**HPD**) Officer Aaron Eveland (**Officer Eveland**) was on-duty, conducting traffic speed enforcement near the intersection of Farrington Highway and Plantation Road. Upon

_____

[1] The Honorable Kevin A. Souza presided.

observing a speeding violation,[2] Officer Eveland performed a traffic stop and approached the driver's-side door.  As Officer Eveland approached, and before he could identify himself or the reason for the stop, Deguerra stated: "I don't have a license and I have a warrant."  At that time, Officer Eveland observed a cylindrical glass pipe with a bulbous end, as well as a green lighter, laying on the front passenger's seat in plain view. Officer Eveland informed Deguerra that he was being arrested for possession of the pipe, and arrested Deguerra without incident.[3] The pipe was recovered, submitted for chemical analysis, and found to have a residual substance containing methamphetamine with a net weight of 0.25 grams.  On October 30, 2019, Deguerra was charged via felony information and non-felony complaint with Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (2014)[4] (**Count One**), and Driving Without a License, in violation of HRS § 286-102.

On January 29, 2021, Deguerra filed a motion to dismiss for de minimis violation (**Motion to Dismiss**), which sought dismissal of the felony information (*i.e.*, Count One) pursuant to HRS § 702-236.  That section states, in relevant part:

> The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct . . .  [d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offenses or did so only to an extent too trivial to warrant the condemnation of conviction[.]"

---

[2]    In their respective submissions to the Circuit Court for Deguerra's motion to dismiss, both parties asserted that Officer Eveland used an HPD-issued radar device that indicated Deguerra's vehicle was traveling 40 miles per hour.  Deguerra's motion indicated, and the State did not contest, that the posted speed limit where Deguerra's vehicle had been traveling was 25 miles per hour.

[3]    Deguerra was also arrested for the outstanding warrant and Driving Without a License.

[4]    HRS § 712-1243 provides:

> (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
>
> (2) Promoting a dangerous drug in the third degree is a class C felony.

HRS § 702-236(1)(b) (2014) (formatting altered). The State opposed the motion, arguing that Deguerra "was not in possession of an infinitesimal amount of methamphetamine so the attendant circumstances of [Deguerra's] arrest are irrelevant for considering dismissal as de minimis."

At a May 19, 2021 hearing on the Motion to Dismiss, Officer Eveland testified, as did HPD Detective Dale Morita (**Detective Morita**). Detective Morita was determined to be an expert in, and testified regarding: "(1) methods that methamphetamine is used, particularly in relation to a glass pipe and residue in a glass pipe; and (2) the amounts or quantities of methamphetamine that are generally sold on the Island of Oahu."

On June 18, 2021, the Circuit Court entered the FOFs/COLs/Order, which granted the Motion to Dismiss and included, among others, the following COLs:

> 9. A consideration of the nature of the conduct and the nature of the attendant circumstances reveals that the facts of this case are comparable to [State v. ]Enos[, 147 Hawaiʻi 150, 465 P.3d 597 (2020)] in many important ways.
>
> 10. First, like in Enos, [Deguerra's] initial interaction with the police was prompted by what appears to be a very low-level, nonviolent allegation - to wit, a routine speeding violation.
>
> 11. Second, like in Enos, the illicit substance was not found on [Deguerra's] person, but instead was in close proximity to him.
>
> 12. Third, like in Enos, [Deguerra] was not engaged in nor suspected of engaging in any violence or committing any violent crime.
>
> 13. Fourth, like in Enos, [Deguerra] was not engaged in nor suspected of engaging in any property crime, let alone the type of high-level property crime the Legislature sought to be prevented via HRS [§] 712-1243.
>
> 14. Fifth, while a glass pipe with residue was found in the vehicle [Deguerra] was operating, there is no evidence that he was observed actively using the glass pipe to ingest methamphetamine or any other substance, or consuming illicit drugs in any way. Officer Eveland testified that the pipe was not warm to the touch when he recovered it.
>
> 15. Finally, there is no evidence that [Deguerra] was intoxicated or under the influence of illicit drugs throughout his entire interaction with Officer Eveland. Per Officer Eveland, [Deguerra] complied with the traffic stop, pulled over immediately, and did not attempt to evade Officer Eveland in any way. As soon as Officer Eveland approached, [Deguerra] voluntarily uttered, "I don't have a license and I have a warrant." Moreover, [Deguerra] fully

complied and cooperated with Officer Eveland's instructions to step out of the vehicle, did not attempt to reach for or conceal the pipe or lighter, and did not resist arrest or struggle in any way.

16. Accordingly, this court has considered the nature of the conduct and the nature of the attendant circumstances, and finds, like in Enos, that [Deguerra's] conduct did not actually cause or threaten the harm or evil sought to be prevented by [HRS §] 712-1243, or did so only to an extent too trivial to warrant the condemnation of conviction for promoting a Dangerous Drug in the Third Degree.

17. Lastly, while the State proffered Detective Morita as an expert witness to testify that the 0.25 grams of residue contained in the pipe is capable of being consumed or sold (i.e., useable or saleable), the Court has several concerns with Detective Morita's expert conclusions:

a. First, Detective Morita is the HPD detective assigned to investigate this case. This is his case. Should this case go to trial, it is expected that Detective Morita would be called as a lay witness for the State. While nothing precludes Detective Morita from testifying as an "expert" in this de minimis inquiry, the Court does consider his interest in the outcome of this case in weighing the effect and value of his testimony.

b. Second, although Detective Morita is the assigned HPD Detective in this case, there is no evidence that he ever personally observed or inspected the pipe or residue in question.

c. Third, while Detective Morita may have previously purchased quantities of methamphetamine as low as 0.18 grams, he admits that the 0.18 grams he previously purchased was in a pure, clear white, crystalline state, and not in the form of burnt residue scraped from the inside of a pipe.

d. Finally, and perhaps most significantly, while Detective Morita claims that it's possible to "consume" 0.25 grams of methamphetamine residue, this blanket assertion is meaningless without tethering it to the facts and circumstances of this case. Notably, no further analysis was conducted to determine how much of the residual substance analyzed by Criminalist Brown was in fact methamphetamine. Therefore, it's not known how much of the 0.25 grams of residual substance actually contained methamphetamine versus other, unnamed chemical compounds. . . . Accordingly, without more information, this Court cannot simply conclude, as a matter of law, that the residual substance recovered from [Deguerra's] pipe was indeed 0.25 grams of methamphetamine, or that it could be "consumed" as such.

(Footnote omitted.)

On appeal, the State contends that the Circuit Court abused its discretion in dismissing the case as a de minimis violation. Relatedly, the State challenges COLs 9 through 17 and the Circuit Court's "Order generally."

4

"[T]he defendant bears the burden of establishing that 'his or her conduct neither caused nor threatened to cause the harm or evil that the statute, under which he or she is charged, seeks to prevent.'" State v. Fukagawa, 100 Hawaiʻi 498, 507, 60 P.3d 899, 908 (2002) (quoting State v. Oughterson, 99 Hawaiʻi 244, 256, 54 P.3d 415, 427 (2002)).

We review the dismissal of a prosecution for a de minimis violation for abuse of discretion. State v. Pacquing, 129 Hawaiʻi 172, 179-80, 297 P.3d 188, 195-96 (2013) (citing State v. Rapozo, 123 Hawaiʻi 329, 336, 235 P.3d 325, 332 (2010)). "A court abuses its discretion if it clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." State v. Enos, 147 Hawaiʻi 150, 159, 465 P.3d 597, 606 (2020) (quoting Rapozo, 123 Hawaiʻi at 336, 235 P.3d at 332).

"Conclusions of law are reviewed de novo under the right/wrong standard of review." State v. Miranda, 147 Hawaiʻi 171, 179, 465 P.3d 618, 626 (2020) (citing State v. Lavoie, 145 Hawaiʻi 409, 421, 453 P.3d 229, 241 (2019)). However, "[a] conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Baker v. Galuteria, 141 Hawaiʻi 468, 475, 413 P.3d 372, 379 (App. 2018) (emphasis omitted).

HRS § 702-236(1)(b) authorizes a court to dismiss a charge if, in light of the attendant circumstances, it finds that the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offenses or did so only to an extent too trivial to warrant the condemnation of conviction[.]" The Hawaiʻi Supreme Court has stated that "the harm sought to be prevented by [HRS § 712-1243] is 'the use of the proscribed drug or its sale or transfer for ultimate use.'" State v. Melendez, 146 Hawaiʻi 391, 395, 463 P.3d 1048, 1052 (2020) (original brackets and some internal quotation marks omitted) (quoting State v. Hironaka, 99 Hawaiʻi 198, 209, 53 P.3d 806, 817 (2002) (quoting State v. Vance, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979))). However, in Enos, the

5

court further clarified:

> Although Promotion of a Dangerous Drug in the Third Degree on its face applies explicitly to drugs in any amount, "where a literal application of HRS § 712-1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702-236 . . . may be applicable to mitigate this result." Vance, 61 Haw. at 307, 602 P.2d at 944; see also Fukagawa, 100 Hawaiʻi at 504, 60 P.3d at 905. The quantity possessed of a dangerous drug is "microscopic" or "infinitesimal," Vance, 61 Haw. at 307, 602 P.2d at 944, and de minimis dismissal is warranted if the amount could not "produce a pharmacological or physiological effect." Fukagawa, 100 Hawaiʻi at 506, 60 P.3d at 907 (citing State v. Hironaka, 99 Hawaiʻi 198, 209, 53 P.3d 806, 817 (2002); State v. Balanza, 93 Hawaiʻi 279, 283-85, 1 P.3d 281, 285-87 (2000)).
>
> Even so, we have long insisted that "quantity is only one of the surrounding circumstances a court must consider." Id. at 505, 60 P.3d at 906. "Before the de minimis statute can be properly applied in a criminal case, all of the relevant facts bearing upon the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge." [State v. ]Park, 55 Haw[. 610,] 616, 525 P.2d [586,] 591[ (1974)]. **Possession of an amount of drugs capable of producing a "pharmacological or physiological effect" may nonetheless warrant dismissal as de minimis if the amount possessed approaches "infinitesimal" - which is to say, a very small amount - and the other attendant circumstances indicate that the defendant "did not cause or threaten the harm or evil sought to be prevented by the law defining the offense**." Vance, 61 Haw[.] at 307, 602 P.2d at 944; HRS § 702-236(1)(b); see also [State v. ]Viernes, 92 Hawaiʻi [130,] 134, 988 P.2d [195,] 199[ (1999)].

Enos, 147 Hawaiʻi at 162, 465 P.3d at 609 (original emphasis and brackets omitted; emphasis added).

The State argues that the Circuit Court abused its discretion by dismissing the charge against Deguerra on de minimis grounds because he:

> failed to present to the circuit court *any* evidence to suggest that the drugs in [his] possession w[ere] not saleable or useable. Under such circumstances, there was no basis upon which the circuit court could conclude that 0.250 grams of a substance containing methamphetamine in [Deguerra's] possession was incapable of producing a pharmacological or physiological effect.

The State's argument is flawed. Whether the amount possessed of a dangerous drug could (or could not) "produce a pharmacological or physiological effect" is not necessarily determinative of whether HRS § 702-236 can be properly applied in a criminal case. Enos, 147 Hawaiʻi at 162-63, 465 P.3d at 609-10.

6

The supreme court stated in Enos:

> To be clear, the quantity of drugs possessed remains a critical consideration when deciding a de minimis motion on a drug charge.  It would be an abuse of discretion, for instance, if a court gave no consideration at all to the quantity possessed.  Cf. Fukagawa, 100 Hawaiʻi at 504-05, 60 P.3d at 905-06.  This would run counter to the legislature's intent to criminalize possession of "any dangerous drug in any amount."  HRS § 712-1243 (emphasis added).  **We only hold in the instant case that the quantity possessed by a defendant may pass the threshold into an amount capable of "produc[ing] a pharmacological or physiological effect" without precluding a court from dismissing a charge as de minimis.**  Fukagawa, 100 Hawaiʻi at 506, 60 P.3d at 906.  **As here, if the amount possessed is capable of producing such an effect but is nonetheless very small, and if the other attendant circumstances weigh in favor of dismissal, it is within a court's sound discretion to dismiss the charge as de minimis.**

Id. at 163, 465 P.3d at 610 (emphases added).

Here, as in Enos, the Circuit Court determined that the "amount of substance of unknown purity, containing methamphetamine" was "very small," and the other attendant circumstances supported dismissal.  See id. at 163, 465 P.3d at 610.  In particular, the Circuit Court found in COLs 10 through 15 that:  Deguerra's initial interaction with the police was "a very low-level, non-violent allegation"; "the illicit substance was not found on [Deguerra's] person, but instead was in close proximity to him"; Deguerra was "not engaged in nor suspected of engaging in any violence" or "in any property crime"; there was "no evidence that [Deguerra] was observed actively using the glass pipe to ingest methamphetamine" or "consuming illicit drugs in any way"; there was "no evidence that [Deguerra] was intoxicated or under the influence of illicit drugs throughout his entire interaction with Officer Eveland"; and Deguerra "complied with the traffic stop," "fully complied and cooperated with Officer Eveland's instructions to step out of the vehicle, did not attempt to reach for or conceal the pipe or lighter, and did not resist arrest or struggle in any way."

COLs 9 through 17 present mixed issues of fact and law.  In particular, COLs 10 through 15 and 17 include factual findings.  The State presents no discernible argument as to why any of the factual findings stated in COLs 10 through 14 are clearly erroneous.  Nor does the State cite any evidence in the

7

record that contradicts or undermines any of these findings.  To the extent the State challenges the factual findings stated in COLs 10 through 14, that argument is deemed waived.  See HRAP Rule 28(b)(7); Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 478, 164 P.3d 696, 736 (2007) ("an appellate court is not obliged to address matters for which the appellant has failed to present discernible arguments").

As to COL 15, the State argues that the Circuit Court's finding — i.e., "there is no evidence that [Deguerra] was intoxicated or under the influence of illicit drugs throughout his entire interaction with Officer Eveland" — is unsupported by the evidence.  However, the State points to no evidence in the record that contradicts or undermines the Circuit Court's finding, and we have found none.  COL 15 is not clearly erroneous.

As to the Circuit Court's conclusions that "the facts of this case are comparable to Enos in many important ways" (COL 9), and that certain facts are "like [those] in Enos" (COLs 10 through 13), the State argues that the Circuit Court "failed to recognize the significant ways in which [this case] differed [from Enos]."  In particular, the State notes "the dissimilarity in the amount of methamphetamine recovered on [Deguerra] and defendant Enos, that is 0.250 grams and 0.005 grams, respectively[,]" and asserts that "[Deguerra] possessed 50 times the amount of methamphetamine than defendant Enos[.]"  In making this assertion, however, the State ignores the fact — which it also does not dispute — that the recovered residue in this case was determined to be "a substance containing methamphetamine with a net weight of 0.25 grams."  (Emphasis added.)  Given that the purity of the recovered substance is unknown,[5] the State's

---

[5]    In COL 17.d., the Circuit Court found and concluded:

[N]o further analysis was conducted to determine how much of the residual substance analyzed by [the HPD criminalist] was in fact methamphetamine.  Therefore, it's not known how much of the 0.25 grams of residual substance actually contained methamphetamine versus other, unnamed chemical compounds. . . .  Accordingly, without more information, this Court cannot simply conclude, as a matter of law, that the residual substance recovered from [Deguerra's] pipe was

(continued...)

8

argument lacks an evidentiary basis in the record.  Cf. Enos, 147 Hawaiʻi at 163-64, 465 P.3d at 610-11 ("Morever, even though the circuit court did not credit the defendant's argument that the substance containing methamphetamine was not tested for purity, the form of the drug and the place it was found – residue in a pipe and a bag – bears on the de minimis analysis").  The Circuit Court did not err in concluding in COL 9 that "the facts of this case are comparable to Enos in many important ways[,]" and in COLs 10 through 13 that the identified facts are "like [those] in Enos[.]"[6]

Considering "the nature of the conduct alleged and the nature of the attendant circumstances," including the "very small amount" of residual substance containing methamphetamine found, it was not an abuse of discretion for the Circuit Court to conclude that Deguerra's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by [HRS § 712-243,] or did so only to an extent too trivial to warrant the condemnation of conviction[.]"  Accordingly, COL 16 is not wrong, and the Circuit Court did not abuse its discretion in dismissing Count One, pursuant to HRS § 702-236.

---

[5] (...continued)
indeed 0.25 grams of methamphetamine, or that it could be "consumed" as such.

Although the State claims to challenge COL 17, it points to no evidence in the record that contradicts or undermines the factual findings in COL 17 that underpin the Circuit Court's "several concerns with Detective Morita's expert conclusions[.]"  The State asserts that the last sentence of COL 17.d. is "unsupported by *any* evidence in the record[,]" but the last sentence is supported by the first two sentences, which are in turn supported by unchallenged FOF 12, as well as the testimony of Detective Morita confirming that "once [methamphetamine is] smoked, you don't know what the purity is[.]"  Further, the State's argument regarding the amount of residual substance possessed by Deguerra focuses on its pharmacological or physiological effect, which, for the reasons discussed above, is not determinative of a de minimis ruling in these circumstances.  COL 17, including COL 17.d., is not clearly erroneous.

[6] The State also argues that the Circuit Court "did not indicate whether it applied the 'totality of the circumstances' test announced in State v. Park," 55 Haw. 610, 525 P.2d 586 (1974), and failed to address all of the Park factors.  This argument was not made below and is thus deemed waived. See State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]"); State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal." (citing State v. Cummings, 49 Haw. 522, 423 P.2d 438 (1967))).

For the reasons discussed above, we affirm the June 18, 2021 "Findings of Fact; Conclusions of Law and Order Granting Defendant's Motion to Dismiss For De Minimis Violation Filed on January 29, 2021," entered in the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, June 16, 2023.

On the briefs:

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellant.

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge