RENDERED: MAY 20, 2010
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

2008-SC-000749-DG

DATE 6-10-2010 Althea Hicks

HARRY FINN, JR.                                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                         CASE NO. 2007-CA-001554-MR
LOGAN CIRCUIT COURT NO. 07-CR-00014


COMMONWEALTH OF KENTUCKY                              APPELLEE


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

We accepted discretionary review to consider whether Kentucky law allows a conviction for possession of a controlled substance when the quantity of the controlled substance in the defendant's possession is so small that it is not visible to the naked eye. We conclude that Kentucky law allows a conviction under those circumstances, particularly when, as here, other evidence tends to prove that the defendant knowingly possessed the substance.

In the past, we have consistently rejected arguments that a defendant must possess a "usable amount" of a controlled substance to be convicted of unlawful possession of a controlled substance because our statutes criminalize unlawful possession of "any amount" or "any quantity" of a controlled

substance.[1] Now we likewise reject Harry Finn's argument that possession of microscopic amounts of a controlled substance could never justify a conviction for criminal possession of a controlled substance. Instead, we hold that a conviction for possession of a microscopic quantity of a controlled substance is valid so long as there is other evidence that the defendant possessed the requisite mental state for the possession offense for which the defendant is charged.

## I. FACTS AND PROCEDURAL HISTORY.

This case arose in a routine traffic stop for minor traffic infractions during which the officer noticed signs that the driver, Finn, was intoxicated. After Finn failed a field sobriety test, the officer arrested Finn without incident for driving under the influence (DUI). The officer also arrested Finn's passenger for alcohol intoxication in a public place after noticing that she smelled strongly of alcohol. Finn does not contest the lawfulness of the search of his automobile or his person as incident to arrest.

The police found a cigarette pack concealed within a work glove on the front seat of the automobile. The glove was not seized, but police found inside the cigarette pack a baggie containing marijuana, which they seized. Police also found and seized from the cigarette pack a glass pipe containing suspected

---

[1] *See, e.g., Bolen v. Commonwealth,* 31 S.W.3d 907, 909-10 (Ky. 2000) (rejecting argument that "any quantity" in amended drug possession statute meant a measurable amount and stating that "the quantity of the controlled substance possessed is immaterial to the criminality of the act . . ."); *Shivley v. Commonwealth,* 814 S.W.3d 572, 574 (Ky. 1991) (rejecting "usable amount" approach in favor of "any amount" approach under former drug possession statute that did not specify that "any quantity" must be possessed).

cocaine residue, and a Chore Boy®, which is a scouring pad commonly used in smoking pipes of crack cocaine. All seized items were found in an area accessible to both occupants of the vehicle.

Upon searching Finn's person, the police also found and seized a white plastic pen casing containing suspected cocaine residue. According to the testimony of the police officer who initially stopped Finn and who searched Finn's person, Finn told the officer that the pen casing was his "push rod"; and Finn admitted to using the pen casing to ingest cocaine and to having already consumed all of the cocaine.[2] Although it appears somewhat unclear from our review of the testimony whether the officer may have possibly seen, or thought he saw, suspected cocaine residue on the pen casing, we will assume for purposes of our review that any residue was not readily visible to the officer's naked eye. Unmistakably, police suspected the presence of cocaine residue on the pen casing because Finn admitted to having used the pen casing as a push rod to smoke cocaine.

Following Finn's arrest, he submitted to toxicology tests at a hospital. No drugs were detected in Finn's blood, but his urine tested positive for cocaine. Trial testimony indicated that the presence of metabolites of a drug in urine but not in the blood would indicate that a drug had "cycled out" of the system.

The items seized from Finn's vehicle and person were also submitted for laboratory testing. Lab tests indicated that the glass pipe and the pen casing

---

[2] The arresting police officer testified to Finn's admission at trial; Finn does not claim any error arising from this testimony.

both tested positive for the presence of cocaine. But the lab technician testified that because police put the glass pipe and the pen casing inside the same evidence bag, it was possible that one had contaminated the other. The lab technician also testified that the actual amount of cocaine was on a microscopic level and could not be seen by the naked eye.

Among other charges, Finn was charged with possession of a controlled substance and possession of drug paraphernalia; and the case went trial. Finn contends that the trial court erred by denying his motion for a directed verdict on these charges. The jury found him guilty of possession of cocaine, second offense, and other offenses[3] and recommended a sentence of ten years' imprisonment. The trial court entered judgment accordingly.

Finn appealed to the Court of Appeals, arguing, among other issues,[4] that the immeasurable amount of cocaine found was insufficient to support the possession conviction. The Court of Appeals rejected that argument and affirmed the conviction. We then granted discretionary review.

## II. ANALYSIS.

### A. Directed Verdict Not Warranted.

Finn argues that the Court of Appeals erred in affirming the trial court's judgment because his convictions for possession of cocaine and use of drug

---

[3] Finn was also convicted of failure to signal, operating a motor vehicle under the influence of a substance that impairs driving ability, and operating a motor vehicle without a license. He was acquitted on a possession of marijuana charge.

[4] Finn also raised issues to the Court of Appeals that we do not reach here concerning allegations of improper venue and inconsistent jury verdicts.

4

paraphernalia[5] could not be justified based upon the microscopic amounts of cocaine actually found in his possession. We reject his assertion of error, and we do so especially in light of the fact that the microscopic amounts of cocaine residue found on the ink pen casing and glass pipe[6] were not the only evidence of Finn's knowing possession of cocaine presented to the jury. The jury also heard the police officer's testimony that Finn admitted to using his pen casing as a push rod to ingest cocaine and to having used up his cocaine through smoking. The cocaine residue left on the pen casing or glass pipe at the time of Finn's arrest was not necessarily the only cocaine that the jury believed Finn to have possessed. In reality, it is likely that the jury believed Finn to have been

---

[5] From our review of the bench conference concerning Finn's motion for a directed verdict, it appears he only requested a directed verdict on the cocaine possession charge and not on the drug paraphernalia charge. Even assuming that he did request a directed verdict on the drug paraphernalia charge, we find no error in the trial court's denial of his request for a directed verdict on either charge.

[6] Finn argued to the Court of Appeals and to this Court that the jury must have based his cocaine possession and drug paraphernalia use convictions solely on the pen casing, which could have been contaminated by the glass pipe found on his person because the jury acquitted him of marijuana possession, meaning, in his estimation, that the jury did not believe any of the items seized from the vehicle belonged to him. But we note that in finding Finn guilty of drug paraphernalia use, the jury found that he "used 'chore boy' brand mesh, a glass pipe, and a white ink pen casing . . . ." So it appears that the jury did find that Finn used the glass pipe, and the residue on the glass pipe could be attributed to him despite the jury's finding that he was not guilty of possession of marijuana. Further, as the Court of Appeals stated, "it is not inconsistent for the jury to make a finding that the marijuana could have belonged to Finn's passenger[.]" The jury could have reasonably found that the pen casing did contain cocaine residue despite the risk of cross-contamination, and inconsistency in jury verdicts is not necessarily error so long as there is sufficient evidence to sustain each conviction. *See, e.g., Commonwealth v. Harrell,* 3 S.W.3d 349, 351 (Ky. 1999). Because the officer testified that Finn admitted to using the pen casing as a push rod to ingest cocaine, but we are unaware of any direct evidence that Finn possessed marijuana other than the fact that marijuana was found within the glove in his car, perhaps the jury was reasonably convinced of his possession of cocaine and use of drug paraphernalia but had reasonable doubts about his possession of marijuana. In any event, we perceive no reversible error stemming from the jury's verdict.

5

in possession of a substantially larger quantity of cocaine on or around the date of his arrest. As Finn told the arresting officer, he thought that he had already consumed all of his stash of cocaine.

Even assuming that the jury only believed Finn to have been in the possession of the microscopic amount of cocaine residue found on the glass pipe or push rod, we find no reversible error because the evidence showed that Finn *knowingly* possessed cocaine; and our statutes and precedent do not require that the amount of cocaine or other controlled substance exceed some minimum quantity threshold. Possession of any amount — no matter how small — of a controlled substance suffices for a first-degree possession of controlled substances conviction so long as the person has knowingly and unlawfully possessed the substance.

Kentucky Revised Statutes (KRS) 218A.1415(1) states that a person is guilty of Possession of a Controlled Substance in the First Degree "when he knowingly and unlawfully possesses: a controlled substance . . . that is classified in Schedules I or II which is a narcotic drug . . . ." Cocaine is a Schedule II narcotic drug.[7] And we have long held that "[c]ocaine residue is, in fact, cocaine and we find no argument to the contrary."[8] Despite the fact that some other courts in other jurisdictions may require that the government prove that the defendant possess a "usable quantity" of a controlled substance to

---

[7] KRS 218A.070(1)(d).

[8] *Shivley*, 814 S.W.3d at 573.

sustain a conviction for possession of a controlled substance,[9] we have consistently held under Kentucky law that the possession of *any amount* of a controlled substance suffices to meet the *actus reus* (forbidden act)[10] requirement of KRS 218A.1415(1): unlawful possession of a controlled substance.[11] And the General Assembly has not seen fit to amend materially the possession statute to require possession of a particular threshold amount

---

[9]  *See, e.g., State v. Vance*, 602 P.2d 933, 944 (Haw. 1979) ("where the amount [of the controlled substance] is microscopic or is infinitesimal and in fact unusable as a narcotic, the possibility of unlawful sale or use does not exist, and the proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control."). *But see Shivley*, 814 S.W.2d at 574 (rejecting "usable amount" approach because "[w]e view this statute as an exercise of the police power in the area of public health. It has effect and legitimacy so far as it can be applied to the accomplishment of a proper function in the area of promoting public health. To permit the possession of an amount of cocaine insufficient for use can in no way be justified as promoting public health.").

[10]  BLACK'S LAW DICTIONARY (8th ed. 2004) defines *actus reus* as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability; a forbidden act . . . ." *See also* BLACK'S definition of *mens rea* as "state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime . . . . *Mens rea* is the second of two essential elements of every crime at common law, the other being the *actus reus*." *Id.*

[11]  *See, e.g., Bolen*, 31 S.W.3d at 909-10 ("Bolen contends that his conviction for possession of a controlled substance cannot be upheld since the amount of cocaine found in each pipe was not measurable. Testing by the Commonwealth revealed that a non-weighable amount of residue existing on each pipe contained the molecular structure of cocaine. . . . Bolen asserts that the statute calls for 'any quantity' and that quantity implies a measurable amount. *See* KRS 218A.1415(1). This argument is directly contrary to this Court's holding in *Commonwealth v. Shivley*, [814 S.W.2d 572 (Ky. 1991)], that 'possession of cocaine residue . . . is sufficient to entitle the Commonwealth's charge to go to a jury when there is other evidence or the inference that defendant knowingly possessed the controlled substance.' *Id.* at 574. Similar to this case, testing in *Shivley* revealed cocaine residue that could not be accurately weighed. However, this Court declared that the quantity of the controlled substance possessed is immaterial to the criminality of the act. *Id.* at 573. *See also Commonwealth v. Harrelson*, [14 S.W.3d 541, 549-50 (Ky. 2000)]. Therefore, the existence of cocaine residue on each pipe was sufficient to support a conviction under KRS 218A.1415(1).").

of the controlled substance, such as a weighable amount, a usable amount, or an amount visible to the naked eye.

We see no reason to depart from our precedent despite Finn's argument that the use of the term "any quantity" in KRS 218A.1415(1)[12] would not include mere residue, especially a microscopic amount of such residue. Finn premises this argument on selected dictionary definitions of *quantity* that indicate that may mean an amount that can be measured. We consider it more likely that the legislature intended *any quantity* to mean *any amount* in accordance with common usage.[13]

Finn also contends that as the legislature explicitly allows the presence of drug residue on an item to be considered as evidence that the item is drug

---

[12] Conceivably, an argument could be made that the "any quantity" language in KRS 218A.1415(1) refers only to methamphetamine and not to Schedule I or II narcotic drugs, such as cocaine, based on the sentence structure of this subsection:

> A person is guilty of possession of a controlled substance in the first degree when he knowingly and unlawfully possesses: a controlled substance that contains *any quantity of methamphetamine,* including its salts, isomers, and salts of isomers or, that is classified in Schedules I or II which is a narcotic drug . . . .

(Emphasis added.) Regardless, whether the government must prove that the defendant knowingly possessed "any quantity" of a Schedule I/II narcotic drug or simply must prove that the defendant knowingly possessed a Schedule I/II narcotic drug in order to sustain a first-degree possession of controlled substance conviction, we conclude that the evidence here was sufficient to sustain the conviction.

[13] *See* KRS 446.080(4) ("All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning.").

paraphernalia[14] and because the statutes theoretically could — but do not

define — *residue* as *any quantity, any quantity* must necessarily mean more

than drug residue. Although his argument is somewhat hard to follow, it

appears that he contends that the legislature did not intend to criminalize the

possession of mere residue (or traces) of controlled substance on drug

paraphernalia under the drug possession statute. According to Finn, the

appropriate conviction would only be for possession of drug paraphernalia

because drug possession convictions should be reserved for possession of a

more sizeable amount than mere residue. Finn asserts that the mentioning of

the presence of residue in the drug paraphernalia statute:

> [S]uggests that the legislature had a desire to punish the intent to
> use or use of illicit drugs, but did not wish to punish those persons
> who possessed drug paraphernalia with a filmy residue as harshly
> as someone who possessed rock or powder cocaine, pills or
> methamphetamine, for that matter. Moreover, most Americans
> have daily contact with cocaine residue.

Finn also asserts that "[p]ractical considerations require that the 'any

quantity' provision of KRS 218a.1415[(1)] and the use of the word 'residue' in

KRS 218A.510(5) are to be defined in different manners. The 'any quantity'

provision [in drug possession statutes] must be construed to mean at least

more than mere film or microscopic levels" and suggests that possession of

"mere film or microscopic levels" would be better punished as possessing drug

paraphernalia.

---

[14] KRS 218A.510(5) ("In determining whether an object is drug paraphernalia, a court or other authority should consider . . . [t]he existence of any residue of controlled substances on the object . . . .").

9

But the evidence in the case at hand proved that not only did Finn possess and use drug paraphernalia but also that he was knowingly in possession of cocaine by his own admission to a police officer. Because the Commonwealth adduced sufficient evidence to convict Finn of both offenses, we find no error in the trial court's denial of a directed verdict.[15]

We recognize that the mere possession of microscopic amounts of a controlled substance, by itself, without evidence that the defendant knew he possessed such a substance, would not satisfy the statutory elements of first-degree possession of a controlled substance. But when a defendant possesses even a microscopic trace or residue of a controlled substance and the evidence shows that the defendant knowingly possessed it, we find no error in the defendant being convicted of first-degree possession of a controlled substance.

Finn cites a number of cases from other jurisdictions that he claims hold that a conviction for drug possession cannot be premised on minute quantities of drugs invisible to the naked eye. These decisions are not binding on this court, and we will not address them in any depth other than to note that the Texas caselaw cited by Finn for the proposition that convictions for possessions of microscopic amounts of controlled substances (invisible to the naked eye) are not permitted[16] does not seem to represent the current controlling rule in

---

[15] *See Benham v. Commonwealth,* 816 S.W.2d 186, 187 (Ky. 1991) ("On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.").

[16] *See, e.g., Pelham v. State,* 298 S.W.2d 171, 173 (Tex.Crim.App. 1956); *Coleman v. State,* 545 S.W.2d 831, 835 (Tex.Crim.App. 1977), cited in Appellant's reply brief.

that jurisdiction. Rather, a majority of the members of the Texas Court of Criminal Appeals, sitting *en banc*, has held that "the [Texas] Court of Appeals erred in requiring the controlled substance to be visible to the naked eye in order to support appellant's conviction [for drug possession]."[17] A justice concurring in that judgment wrote separately to acknowledge that previous Texas precedent requiring that the controlled substance "be visible to the naked eye and measurable" to sustain a drug possession conviction was subject to an exception "when other evidence demonstrates the defendant *knowingly* possessed the substance," *i.e.* evidence beyond mere possession showing the defendant had knowledge of his possession of a controlled substance where the amount of the substance at issue found is too small to be measured.[18] Similarly, other jurisdictions, which might hold that possession of microscopic amounts of controlled substances, standing alone, was insufficient to justify a possession conviction, might recognize an exception when there is other clear evidence that the defendant knowingly possessed the controlled substance.[19] But regardless of the views of other jurisdictions, we simply find no reason under our law to invalidate Finn's conviction simply because the

---

[17] *Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995).

[18] *Id.* at 377 (Baird, J., concurring), *citing, e.g., Coleman*, 545 S.W.2d at 835.

[19] *See People v. Vaughn*, 504 N.W.2d 2, 5-6 (Mich.Ct.App. 1993) (noting that prior Michigan precedent holding that "an amount of controlled substance invisible to the naked eye, *by itself*, is not enough to sustain a [possession] conviction" held open possibility that "other facts and circumstances" could show knowing possession and sustaining possession conviction despite "miniscule quantity" of cocaine directly found in defendant's possession due to evidence that others perceived that defendant used controlled substance from their observations of him and evidence that defendant had destroyed evidence.).

quantity of cocaine found in his possession at the time of his arrest was not measurable or visible to the naked eye.

In short, we find no reason to require that the prosecution directly prove that the defendant was in possession of the substance in a measurable quantity or a quantity visible to the naked eye when other evidence shows that the defendant knowingly possessed a controlled substance without legal justification. We affirm the decision of the Court of Appeals.

Minton, C.J.; Abramson, Cunningham, Noble, Schroder, and Venters, JJ., sitting. All concur. Scott, J., not sitting.

12

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane
Suite 302
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Heather Michelle Fryman
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601

Julie Scott Jernigan
Assistant Attorney General
Office of the Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204