988 P.2d 195

STATE of Hawai'i, Plaintiff–Appellant,

v.

Patrick VIERNES, Defendant–Appellee.

No. 22266.

Supreme Court of Hawai'i.

Nov. 9, 1999.

Bryan K. Sano, Deputy Prosecuting Attorney, for the plaintiff-appellant State of Hawai'i.

Rose Ann Fletcher, Deputy Public Defender, for the defendant-appellee Patrick Viernes.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant State of Hawai'i (the prosecution) appeals from the findings of fact (FOFs), conclusions of law (COLs), and order granting the defendant-appellee Patrick Viernes's motion to dismiss, filed on January 26, 1999. On appeal, the prosecution contends that the circuit court erroneously dismissed the charge against Viernes of promoting a dangerous drug in the third degree, pursuant to HRS § 712–1243 (1993 & Supp.1998).[1] The prosecution's argument is

---

1. HRS § 712–1243 provides in relevant part:
   **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third de- gree if the person knowingly possesses any dangerous drug in any amount.
   . . . .

untenable. Accordingly, we affirm the circuit court's order.

## I. *BACKGROUND*

On August 9, 1998, Viernes was placed under arrest for allegedly having threatened to harm his wife, Linda A. Viernes (Linda), while at the same time holding a knife in his hand. Before being taken into custody by the police, Viernes emptied his pockets and handed a bundle of cash and papers to Linda. Linda turned the papers over to the police. The papers included an envelope that contained two small clear plastic packets, one of which contained a small amount of a crystalline substance. Upon analysis, it was determined that the substance weighed .001 grams and contained methamphetamine.[2]

On August 17, 1998, a complaint was filed against Viernes, charging him with one count (Count I) of terroristic threatening in the first degree, in violation of HRS § 707–716(1)(d) (1993),[3] and one count (Count II) of promoting a dangerous drug in the third degree, in violation of HRS § 712–1243, *see supra* note 1.

On October 26, 1998, Viernes filed a motion to dismiss Count II on the ground that the charged offense constituted a *de minimis* infraction, pursuant to HRS § 702–236 (1993).[4] The circuit court heard Viernes's motion on December 9, 1998.

At the hearing, Viernes offered George W. Read, Ph.D., professor emeritus of pharmacology at the University of Hawai'i School of Medicine, as an expert in the area of pharmacology. Dr. Read testified in relevant part as follows:

[Deputy Public Defender (DPD) ]: What is your opinion as to what would be the minimum effective ... illicit use dose [of methamphetamine] for an adult?

Dr. Read: We have a dilemma here, too, because at these concentrations normal usage for an illicit effect, tolerance develops very rapidly. So if you were to take—I assume no one in this room is using it, so if we were to use it we would get a—we would be conscious of a substantial effect at fifty milligrams [.05 grams], we would feel those things I described. But a person who uses it frequently would develop tolerance and would require a much, much larger dose. Doses as high as 1,700 milligrams [1.7 grams] are noted in people who use it routinely.

. . . .

[DPD]: Okay. So your understanding of the way [the crystalline substance found in Viernes's possession] was tested was that .001 ... grams would reflect the aggregate substance, not necessarily the exact amount of methamphetamine that would be within that substance?

Dr. Read: That's correct.

. . . .

[DPD]: Okay. In regard to the .001 grams, given the research that you've done and the literature that you've reviewed,

---

(3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. . . .

2. The laboratory analysis failed to detect the presence of any drugs in the second packet or in two glass vials that Linda had given to the police.

3. HRS § 707–716(1)(d) provides in relevant part that "[a] person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening ... [w]ith the use of a dangerous instrument."

4. HRS § 702–236 provides in relevant part:

**De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

. . . .

(b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

(2) The court shall not dismiss a prosecution under subsection 1(c) of this section without filing a written statement of its reasons.

would .001 grams be characterized as an infin[i]tes[i]mal or microscopic amount?

Dr. Read: Well, scientifically "microscopic" means something very specific, but it's . . . a very small amount[,] far less than would be effective for any of these actions or any other that I know of that methamphetamine would be used for.

[DPD]: Okay. Is it—asking your expert opinion now, would a person be able to use .001 as effective for illicit use?

Dr. Read: No.

[DPD]: Okay. Would a person be able to use .001 as an item for sale?

Dr. Read: No.

[DPD]: Would it be a saleable amount?

Dr. Read: No.

. . . .

[DPD]: Just lastly, doctor, in your opinion[,] .001, could it in any way be used for sale or illicit use or even clinical use by an adult male?

. . . .

Dr. Read: Nowhere near enough to produce any action, pharmacological action that I'm aware of.

On redirect examination, Dr. Read testified further:

[DPD]: So, Dr. Read, despite any form, right, no matter what form it is, could .001 cause a physiological effect on a human body?

Dr. Read: None that I'm aware of.

Following Dr. Read's testimony, the circuit court engaged in the following colloquy with the prosecution:

THE COURT: What is a narcotic?

[Deputy Prosecuting Attorney (DPA)]: It produces an—

THE COURT: An effect; right?

[DPA]:—an effect.

The circuit court orally granted Viernes's motion to dismiss, finding as follows:

The Court is going to find that[,] based on the evidence presented[,] a substance weighing in the amount of .001 grams, containing methamphetamine, has no pharmacological effect and, therefore, the Court finds it to be unusable for use or sale.

The Court is also going to find . . . [,] on the basis of State versus Vance and HRS 702–236, that a conviction for possession of this amount of methamphetamine, which would mandate a felony conviction and a mandatory five-year term of incarceration with a mandatory thirty days incarceration before being eligible for parole, result[s] in an unduly harsh conviction.

The Court is also going to find that possession of this amount of methamphetamine constitutes a de minimis infraction within the meaning of HRS 702–236 and, therefore, the motion is granted.

On December 29, 1998, Viernes entered a no contest plea with respect to Count I. On January 26, 1999, the circuit court entered its FOFs, COLs, and order granting Viernes's motion to dismiss Count II. The circuit court's FOFs included the following:

4. Upon analysis of the substance inside the one plastic packet recovered by police, it was determined that the substance weighed .001 grams and contained an unknown quantity of methamphetamine.

. . . .

6. The undisputed testimony of George W. Read, Ph.D., was that the minimal amount of methamphetamine necessary for a physiological / psycho-neuro response is 0.050 grams.

. . . .

8. Aside from the .001 grams of drug recovered in this case, there was no evidence presented to support the inference that Mr. Viernes was involved in drug use or drug trafficking.

The circuit court also entered the following COLs:

1. .001 grams of methamphetamine is unusable for use or sale as a narcotic/illicit substance.

2. There were no additional factors besides mere possession indicating an ability of Mr. Viernes to use or sell the .001 grams of the illicit substance.

3. On the basis of State v. Vance, 61 Haw. 291, 602 P.2d 933 (1979) and HRS § 702–236, a felony conviction and manda-

tory five year term of incarceration with a possible mandatory minimum sentence of up to three years would result in an unduly harsh conviction.

3. [sic] Mere possession of .001 grams of methamphetamine did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; and presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense. HRS § 702–236.

4. Therefore, possession of .001 grams of methamphetamine constitutes a de minimis infraction within the meaning of HRS § 702–236.

The prosecution filed a timely notice of appeal on February 2, 1999.

## II. *STANDARD OF REVIEW*

■ Prior to resolving whether an offense is *de minimis,* pursuant to HRS § 702–236, *see supra* note 4, the trial court must undertake factual determinations. *See State v. Park,* 55 Haw. 610, 616–17, 525 P.2d 586, 591 (1974) (noting that, "before the code's § 236 can be properly applied in a criminal case, all of the relevant facts bearing on the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge" so that the judge may "consider all of the facts on this issue").

[Findings of fact] are reviewed under the clearly erroneous standard. *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Id.* *State v. Kane,* 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998) (brackets in original).

■ Once a court has considered the relevant facts, it must decide whether the alleged infraction is *de minimis.*

The dismissal of a prosecution for a *de minimis* infraction pursuant to HRS § 702–236 ... is not a defense. The authority to dismiss a prosecution under HRS § 702–236 rests in the sound discretion of the trial court. Therefore, a court's decision under HRS § 702–236 is reviewed for abuse of discretion. We will reverse the trial court only if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Ornellas,* 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App.1995); *see also State v. Reed,* 77 Hawai'i 72, 85, 881 P.2d 1218, 1231 (1994); supplemental commentary on HRS § 702–236 (noting that the legislature intended "to make the court's power to dismiss a prosecution discretionary upon the finding that the conduct constituted a de minimis infraction") (quoting Sen. Conf. Comm. Rep. No. 2, in 1972 Senate Journal, at 741). This decision is akin to those made regarding the admissibility of certain types of evidence, which require "judgment calls" on the part of the trial judge. *See, e.g., State v. Cabrera,* 90 Hawai'i 359, 366, 978 P.2d 797, 804 (1999) (noting that Hawai'i Rules of Evidence (HRE) Rules 403 and 404 are reviewed pursuant to the abuse of discretion standard).

## III. *DISCUSSION*

■ The prosecution argues that the circuit court "erroneously dismissed [C]ount II against [Viernes]." Inasmuch as the quantity of methamphetamine possessed by Viernes was infinitesimal and unusable as a narcotic, and was thereby incapable of causing or threatening the harms sought to be prevented by HRS § 712–1243, we disagree.

The prosecution relies upon this court's decision in *State v. Vance,* 61 Haw. 291, 307, 602 P.2d 933, 944 (1979), for the proposition that "the direct and unambiguous language of [HRS § 712–1243] prohibits us from judicially amending the provision to include a usable quantity standard." We note, however, that the *Vance* court elaborated upon this narrow observation as follows:

We mention in passing, however, that where a literal application of HRS § 712–1243 would compel an unduly harsh convic-

tion for possession of a microscopic trace of a dangerous drug, HRS § 702–236, "De minimis infractions[,]" may be applicable to mitigate this result. HRS § 702–236 provides that the court may dismiss a prosecution if, considering all the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction.

The evil sought to be controlled by the statute[ ] mentioned above is the use of narcotic drugs and their sale or transfer for ultimate use. Where the amount of narcotics possessed is an amount which can be used as a narcotic, the probability of use is very high and the protection of society demands that the possession be proscribed. However, *where the amount is microscopic or is infinitesimal and in fact unusable as a narcotic, the possibility of unlawful sale or use does not exist, and proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control. Thus, the possession of a microscopic amount in combination with other factors indicating an inability to use or sell the narcotic, may constitute a de minimis infraction within the meaning of HRS § 702–236 and, therefore, warrant dismissal of the charge otherwise sustainable under HRS § 712–1243.*

*Id.* (Emphasis added.) The *Vance* court declined to apply the foregoing analysis to the facts before it, resolving that "the possession of .7584 gram[s] of white powder containing cocaine and the possession of three tablets of secobarbital by the appellants does not call into play the application of HRS § 702–236." *Id.*

HRS § 702–236 provides that an offense may be *de minimis* where it "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense[.]" Under certain circumstances, this may, as *Vance* suggests, trump the "any amount" requirement of HRS § 712–1243. *See supra* note 1. The legislative purpose of the penal statutes relating to drugs and intoxicating compounds—including HRS § 712–1243—is to respond to "abuse and social harm." Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040. The legislature increased the penalties attendant to the possession or distribution of methamphetamines "to counter increased property and violent crimes." 1996 Haw. Sess. L. Act 308, at 970. As *Vance* suggests, however, if the quantity of a controlled substance is so minuscule that it cannot be sold or used in such a way as to have any discernible effect on the human body, it follows that the drug cannot lead to abuse, social harm, or property and violent crimes. Accordingly, "proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control." *Vance*, 61 Haw. at 307, 602 P.2d at 944.

In the present matter, the quantity of the drug at issue was "infinitesimal and in fact unusable as a narcotic." *See id.* It is uncontested that the substance possessed by Viernes weighed .001 grams and contained methamphetamine.[5] Even assuming, *arguendo*, that the .001 grams consisted of pure methamphetamine, Viernes adduced *uncontroverted* evidence that .001 grams of methamphetamine (1) could not produce *any* pharmacological action or physiological effect and (2) was not saleable. Inasmuch as the .001 grams of methamphetamine was infinitesimal and was neither useable[6] nor salea-

---

5. The prosecution argues that the circuit court erred in finding that the substance "weighed .001 grams and contained an unknown quantity of methamphetamine." Inasmuch as the record indicates that the laboratory analysis of the substance provided merely that the substance weighed .001 grams and "contain[ed] methamphetamine," it does not follow that the circuit court erred in finding that the amount of methamphetamine was unknown. Indeed, it would appear to be self-evident that, by the plain language of the analysis, the quantum of actual

methamphetamine in the sample was not measured in and of itself.

6. The prosecution argues that, inasmuch as the .001 grams of methamphetamine could be injected or smoked, it was useable, and therefore an "evil sought to be controlled by the statute." *See Vance*, 61 Haw. at 307, 602 P.2d at 944. This argument is specious. The *Vance* court did not suggest that *any* "useable" substance posed a potential evil, but, rather, only those substances "which can be used *as a narcotic.*" *Id.* (Emphasis added.) The prosecution conceded at the

ble, it could not engender any abuse or social harm. As such, Viernes's possession of the .001 grams of methamphetamine did not threaten the harm sought to be prevented by HRS § 712–1243. Accordingly, the circuit court did not abuse its discretion in determining that .001 grams of methamphetamine was *de minimis* pursuant to HRS § 702–236.

It should be noted that, in so holding, this court should not be seen as contradicting *Vance* and applying a "usable quantity standard" to HRS § 712–1243. As pointed out in *Vance,* the determination of the amount of a drug necessary to constitute an offense falls solely within the purview of the legislature. The present holding would merely recognize, as *Vance* suggests, that conduct may be so harmless that, although it technically violates HRS § 712–1243, it is nonetheless *de minimis* pursuant to HRS § 702–236.

The prosecution contends that "the lower court's dismissal of Count II pursuant to HRS § 702–236 was wrong as it failed to consider all the relevant circumstances surrounding [Viernes's] conduct." Specifically, the prosecution recites a number of facts found in the record and baldly asserts that "the lower court did not consider any of these relevant facts." The prosecution points to *nothing,* however, that even remotely reflects that the circuit court failed to consider all of the relevant circumstances. In fact, the circuit court's FOFs establish the contrary.[7] Accordingly, the circuit court did not abuse its discretion in dismissing Count II pursuant to HRS § 702–236.

## IV. *CONCLUSION*

Based on the foregoing reasoning, we affirm the first circuit court's findings of fact (FOFs), conclusions of law (COLs), and order granting the defendant-appellee Patrick

Viernes's motion to dismiss, filed on January 26, 1999.

---

hearing on Viernes's motion to dismiss Count II that a narcotic is something that produces an "effect," which the undisputed record established that .001 grams of methamphetamine cannot.

7. The prosecution argues that several of the circuit court's FOFs were erroneous, although only one of the FOFs at issue merits further discussion as being material to our analysis. In this connection, the prosecution argues that the cir-

cuit court erred in finding that "the minimal amount of methamphetamine necessary for a physiological/psycho-neuro response is 0.050 grams." Inasmuch as Dr. Read testified that a first-time user would use about .05 grams in order to be conscious of an effect, and the prosecution adduced no evidence to the contrary, it follows that the circuit court's finding in this respect was not clearly erroneous.