**Electronically Filed
Supreme Court
SCWC-18-0000407
27-MAY-2020
09:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

FRANK ENOS,
Petitioner/Defendant-Appellant.

SCWC-18-0000407

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000407; CR. NO. 1CPC-18-0000113)

MAY 27, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

A police officer discovered Frank Enos sleeping below a freeway and arrested him for Criminal Trespass onto State Lands. Hawai'i Revised Statutes (HRS) § 708-814.7 (Supp. 2017). Nearby, the officer found a pipe and plastic bag, from which the police later recovered an aggregate .005 grams of substances containing

methamphetamine.  Enos was subsequently charged with Promotion of a Dangerous Drug in the Third Degree, a class C felony.  HRS § 712-1243 (2014).

Enos moved to dismiss the charge as de minimis pursuant to HRS § 702-236 (2014), which allows a court to dismiss a criminal charge when the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]"  The State opposed the motion, arguing that .005 grams of methamphetamine was sufficient to produce a physiological effect and therefore not de minimis.  In addition, the State asserted that Criminal Trespass onto State Lands is a property crime, and this court has long described the purpose of Promoting a Dangerous Drug in the Third Degree as, among other things, preventing property crimes.

The circuit court granted the motion, concluding that Enos's conduct did not "warrant the condemnation of conviction." While the circuit court credited expert testimony that .005 grams of methamphetamine could affect the body, and it therefore concluded the amount possessed was not de minimis, the other attendant circumstances weighed in favor of dismissal.  In addition, as a matter of statutory interpretation, the circuit court determined that Criminal Trespass onto State Lands was not a property crime and accordingly did not constitute a "harm" or "evil" with which the drug statute was concerned.

2

On appeal, the Intermediate Court of Appeals (ICA) disagreed with the circuit court that Criminal Trespass was not a property crime, but agreed that "it was not a property crime consistent with the legislative intent of criminalizing the possession of any amount of illicit drugs." Nonetheless, the ICA remanded to the circuit court based on two clearly erroneous findings of fact that it could not conclude were harmless.

We hold that it was within the circuit court's discretion to dismiss the charge against Enos as de minimis. While there were errors of fact in the circuit court's order dismissing the charge, those errors did not affect the outcome and were therefore harmless. In addition, the ICA correctly analyzed Criminal Trespass onto State Lands and its relationship to the de minimis statute. While Criminal Trespass onto State Lands is a property crime, it is not the type of property crime that motivated the legislature to criminalize possession of any amount of a dangerous drug.

Moreover, although the amount of methamphetamine Enos possessed was capable of producing some effect on the body, quantity is one of many factors a court must consider when deciding a de minimis motion on a drug charge. In light of the minute quantity of methamphetamine he possessed and the mitigating circumstances presented by the facts of this case, the circuit court did not abuse its discretion when it dismissed the Promotion of a Dangerous Drug in the Third Degree charge against

3

Enos as de minimis.

## I.  BACKGROUND

### A.  Enos's Arrest

On January 21, 2018, around 11:00 p.m., Officer Albert Moniz of the Honolulu Police Department (HPD)[1] did a "routine patrol check" of an area under the H-1 Freeway near the intersection of Waiʻalae Avenue and Kealaʻolu Avenue in Honolulu, "based on complaints that residentially challenged individuals" were camping there.  The area under the freeway belongs to the State of Hawaiʻi, and there are signs in the area that say "Keep Out," "Government Property," and "Trespassers will be Prosecuted."

Using his flashlight, Officer Moniz saw Enos lying behind a cardboard box under the freeway and recognized him from past encounters.  When Officer Moniz was about five feet away from Enos, he noticed a "neoprene pouch with a clear glass pipe containing a bulbo[u]s end sticking out of it."  Enos tried to hide the bag under his leg.  Recognizing the pipe to be drug paraphernalia used to smoke methamphetamine, Officer Moniz instructed Enos to stand up and asked him to hand over the pipe, to which he responded "I don't know what you're talking about." Officer Moniz placed him under arrest for Criminal Trespass onto

---

[1]     The account of Enos's arrest comes from the police report by Officer Moniz and the Declaration by HPD Detective Reginald Caneda attesting to the facts that established probable cause.  The parties stipulated to the police report, and for the purposes of the de minimis motion, the facts are undisputed.

State Lands.  See HRS § 708-814.7.[2]  Enos told the Officer, "I know, but I have nowhere else to go."

After placing Enos under arrest, Officer Moniz recovered the glass pipe from the open neoprene pouch, which Enos denied belonged to him.  The open pouch also contained a "clear zip lock type bag containing a crystalline substance" that resembled crystal methamphetamine.  In addition, a warrant check revealed three outstanding warrants for Contempt of Court.  Enos was taken into custody and read his Miranda rights.  When questioned thereafter, Enos again denied that he possessed, used, or owned the pipe.  He asserted that he was watching the area for his friend, who had been using the pipe earlier in the evening with Enos's girlfriend.

The pipe and plastic bag were submitted to the HPD Scientific Investigation Section, and an HPD analyst tested both for methamphetamine.  The pipe contained .002 grams of a substance containing methamphetamine, and the plastic bag contained .003 grams of the same.  The analyst did not do a purity test on either substance.

**B.  Circuit Court Proceedings**

In the Circuit Court of the First Circuit (circuit court),[3] the State charged Enos with Promoting a Dangerous Drug in the Third Degree for knowingly possessing methamphetamine,

---

[2]     For the text of HRS § 708-814.7, see infra note 9.

[3]     The Honorable Karen T. Nakasone presided.

which is a class C felony.  See HRS § 712-1243.[4]

### 1.   Motion to Dismiss for De Minimis Violation

Enos filed a Motion to Dismiss for De Minimis Violation (Motion) pursuant to HRS § 702-236.[5]  The Motion argued that the amount of methamphetamine found was de minimis because it was "neither useable nor saleable for any illicit purpose."[6]  To support this claim, the Motion pointed to our decision in State v. Vance, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979), which Enos said

> approved dismissing charges based upon possession of a small amount of a dangerous drug "where . . . the amount is microscopic or is infinitesimal and in fact unusable as a narcotic, the possibility of unlawful sale or use does not exist, and proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control."

Enos asked to incorporate into the record testimony from past hearings on the issue of how much methamphetamine could

---

[4]    HRS § 712-1243 provides: "(1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.  (2) Promoting a dangerous drug in the third degree is a class C felony."

[5]    HRS § 702-236 provides in relevant part: "The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct . . . [d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense."

[6]    Enos's motion only addressed the substance containing methamphetamine recovered from the pipe (.002 grams).  The substance recovered from the bag (.003 grams) was tested on March 8, 2018, after Enos filed the Motion to Dismiss.  On the same day that Enos filed the Motion to Dismiss, he also filed a Motion for a Bill of Particulars, asking the State to clarify "the act of possession at issue and the item containing methamphetamine at issue" and noting the lack of analysis of the contents of the bag.  The State opposed the motion and submitted a Memorandum in Opposition on March 29, 2018.
  The State clarified in the Memorandum and again in court on April 2, 2018, that it was proceeding on possession of both the pipe and the bag, and the Motion for a Bill of Particulars was denied.

trigger a physiological response.  In particular, the Motion relied on the testimony of Dr. George Read, an expert who testified before the circuit court in 1999 in State v. Oneha, CR No. 99-0742.  Dr. Read had testified that .008 grams of methamphetamine "cannot produce a euphoric effect and is insufficient for sale of illicit use."  Enos asked the court to credit this testimony rather than that of Dr. Kevin Ho, the State's expert in Oneha, who had extrapolated that inhaling .002–.005 grams of methamphetamine can produce euphoric effects. In addition, Enos pointed to the fact that the HPD did not test the substance found in the pipe and bag for purity.  He argued that nothing about the circumstances "indicate[d] that [Enos] either intended to use or sell" the drug.  Accordingly, that fact, combined with the small amount of material containing methamphetamine found (of which it was possible that only a fraction was actually the drug), warranted dismissal of the charge as de minimis.

In its Memorandum in Opposition, the State argued that under the totality of the circumstances, Enos's "conduct did in fact cause or threaten the harm sought to be prevented, i.e. narcotic drug use."  The State pointed to the legislative history of § 712-1243, the statute criminalizing Possession of a Dangerous Drug in the Third Degree, and noted that this court has recognized the purpose of the statute to be "to respond to abuse and social harm" and to "counter increased property and violent

7

crimes." State v. Viernes, 92 Hawai'i 130, 134, 988 P.2d 195, 199 (1990) (quoting H. Conf. Comm. Rep. No. 1 in the 1972 House Journal at 1040 and 1996 Haw. Sess. L. Act 308 at 970). The State argued that because the Defendant was found trespassing on State property - a property crime - when the drugs were found, Enos indeed threatened the type of harm - property crimes - that the legislature sought to prevent. Finally, the State highlighted that the burden of proof rested with Enos to show that the attendant circumstances warranted dismissal and claimed that Enos failed to meet that burden. The State argued that Enos failed to prove that .005 grams of methamphetamine constituted a de minimis amount and asked the court to credit Dr. Ho's testimony in State v. Castro, CR No. 01-1-2105, in which the expert "opined that a dose 'smaller' than .0025 grams can . . . cause a physiological effect."

At the hearing on the motion, Enos emphasized that Criminal Trespass onto State Lands was not among the harms that the legislature intended to combat by criminalizing drug possession. Conceding that Enos was found "sleeping in an area that he wasn't supposed to be," Enos nonetheless contended that the legislature intended to combat "public violence and property offenses." According to Enos, this charge constituted an "attempt[ ] to pigeonhole what should be paraphernalia drugs . . . into a felony statute."

In addition, Enos emphasized that because there was no

purity test done on the net .005 grams of methamphetamine-containing substance, "[w]e have no idea how much of that substance was actually meth." He also pointed to the other attendant circumstances that minimized his culpability: the pipe was not warm to the touch, which would indicate recent use; there were no other tools around that would allow Enos to smoke the material (e.g., a lighter, scraper, or scooper); Enos had no cash that would suggest dealing; there was no indication that Enos was intoxicated when he was arrested; and when discovered, the pipe was not in use and lying five feet away.

The five-foot distance, which Enos mentioned in his Motion and at the hearing, did not accurately reflect the police report, to which Enos stipulated. Although the State called attention to the mistake on appeal, it did not object to the misstatement during the hearing. In fact, the report indicated that Officer Moniz was five feet from Enos when he saw the pipe, but it did not mention precisely how far the bag and pipe were from Enos. The report indicated that the pipe was "next to [Enos's] left leg." (Emphasis added.)

The State's argument in response to Enos at the hearing focused on the legislature's intent to prevent property crimes. The State first emphasized the circumstances in which Enos was arrested: he was trespassing on State property in an area with conspicuous signs and arrested for Criminal Trespass onto State Lands. This, according to the State, is a property crime. The

State also noted the defendant's record and his past convictions for other property offenses (specifically, forgery, unauthorized control of a propelled vehicle, and escape associated with the unauthorized control conviction).[7]  Clarifying to the court that the amount of drugs found was only one of many factors the court should consider, the State asserted that Enos had not met his burden.  The State emphasized that the legislature's intent in criminalizing possession "was specifically to prevent these property crimes."  Finally, the State defended Dr. Ho's analysis and claimed that even using Dr. Read's testimony, .005 grams of methamphetamine would still produce some physiological response, even if that response fell short of euphoria.  In sum, the State argued that under the totality of the circumstances, Enos's offense was more than de minimis.

**2.    The Order Granting the Motion to Dismiss**

The circuit court orally granted Enos's motion and issued a written order (Order) two weeks later.  In the Order, the circuit court made eleven Findings of Fact (FOF):

> 1. On January 21, 2018, Honolulu Police Officer Albert Moniz (Officer Moniz) found Defendant laying in a cardboard box.
>
> 2. It [is] undisputed that Defendant is well-known to Officer Moniz as a homeless person.  Officer Moniz and Defendant had multiple prior interactions in that regard.
>
> 3. Officer Moniz discovered a pouch containing a glass pipe and zip packet in a homeless encampment, located five (5) feet away from Defendant, not inside the cardboard box.

---

[7]    These convictions were thirteen and eighteen years old respectively, which Enos pointed out at the hearing.

4. While Defendant did try to conceal the pouch containing the pipe and the packet, Defendant repeatedly told Officer Moniz that it did not belong to him and it belonged to his friend.

5. No other drug paraphernalia was found on Defendant's person.

6. The Defendant told officers he had nowhere else to go and that was why he was camped out at that location.

7. Officer Moniz initially appended [sic] and arrested Defendant for Trespassing on State Lands in violation of section 708-814.7 of Hawaii Revised Statutes (HRS).

8. Officer Moniz recovered the glass pipe and zip packet.

9. The contents of the glass pipe and zip packet were tested by [an] HPD criminalist . . . .

10. [The] HPD Criminalist . . . determined that the substance in the pipe and packet at issue weighed a combined .005 grams and contained methamphetamine.

11. On March 25, 2002, Dr. Kevin Ho, a qualified expert in the field of Pharmacy, testified that .0025 grams of inhaled methamphetamine is capable of producing a physiological or euphoric effect.

Next, in its Conclusions of Law (COLs), the court concluded that .005 grams "meets the criteria for illicit use." The court cited several of our cases that found as little as .002 grams of residue to be more than de minimis, at least absent other attendant circumstances. See, e.g., State v. Carmichael, 99 Hawai'i 75, 80, 53 P.3d 214, 219 (2002). In light of the defendant's burden of proof, the court also stated that "[n]o evidence was presented to support defense's challenge that no purity analysis was done to determine what portion of the .005 [grams of] substance actually constituted methamphetamine."

However, the court found that the offense was

11

nonetheless de minimis. Citing State v. Fukagawa, the court defined its task as determining whether "the defendant's conduct caused or threatened the harm or evil sought to be prevented by the law defining the offense sufficiently to warrant the condemnation of conviction." 100 Hawai'i 498, 505, 60 P.3d 899, 906 (2002). As to the charging statute, HRS § 712-1243, the court found that this law "proscribes the use and sale of illicit drugs" in order "to address 'related social harms, including property and violent crimes,'" again quoting Fukagawa, 100 Hawai'i at 504-05, 60 P.3d at 905-06.

Addressing the relevant attendant circumstances, the court found that the pipe and pouch "were not found on the defendant's person, but on the ground, five feet away from the cardboard box that the defendant was lying in." Likewise, "[n]o other paraphernalia was found on defendant's person." In addition, Enos was not "engaged in nor suspected of engaging in any violent activity" nor was he "committing a crime against the property of another, such as theft, burglary, or property damage." Accordingly, the court determined that these circumstances "do not support a finding of illicit use or intent for illicit use."

Concerning HRS § 708-814.7,[8] the court concluded that

_____

[8]    HRS § 708-814.7 provides in relevant part:

(1) [With the exception of certain state property,] a person commits the offense of criminal trespass onto state lands if:

(continued...)

Criminal Trespass onto State Lands "is not a property crime consistent with the legislative intent criminalizing the possession of any amount of illicit drugs." The court pointed to § 708-814.7(4), which provides: "No conviction under this section shall be used to establish a felony conviction under section 708-803." In turn, HRS § 708-803 (Supp. 2016) covers habitual property crimes. From § 708-814.7(4), the court concluded that Criminal Trespass onto State Lands "is specifically exempted from being a property crime, even though it is contained with Chapter 708, which deals with offenses against property rights." The court also noted that the legislative history of § 708-814.7 "indicates a concern that the statute not be used to punish or criminalize homelessness." Accordingly, it would be inconsistent with that intent to construe Criminal Trespass onto State Lands, the commission of which "ar[ose] out of [Enos's] homelessness situation" in the instant case, as a property crime for determining whether Enos's drug offense was de minimis.

The circuit court concluded that, in light of all the attendant circumstances, Enos "did not cause or threaten the harm or evil sought to be prevented by the law defining [Possession of

---

[8](...continued)

. . .

    (b) The person enters or remains unlawfully in or upon any state land on or under any highway, and the state land has a sign or signs displayed upon the land that are sufficient to give reasonable notice that read: "Government Property - No Trespassing";

. . . .

(4) No conviction under this section shall be used to establish a felony conviction under section 708-803.

a Dangerous Drug in the Third Degree] sufficient to warrant the condemnation of conviction." The circuit court thus granted Enos's Motion to Dismiss.

## C.    ICA Proceedings

The State appealed to the ICA, asking it to vacate the Order of Dismissal and remand the case for trial. In addition to reiterating the arguments made to the circuit court, the State called attention to the discrepancy between the police report and FOFs 1 and 3. The circuit court found that Enos was lying in a cardboard box and that the pipe and pouch were five feet away, but the State asserted that the police report contradicted these findings,[9] rendering them clearly erroneous. Per the State, the distance between Enos and the pipe, combined with his attempt to conceal the pipe and his denial that the pipe was his, supported the conclusion that Enos constructively possessed the drugs. In response, Enos conceded that FOFs 1 and 3 were inconsistent with the police report and not supported by evidence. He noted, however, that the State had the opportunity to object when the erroneous five-foot distance was raised in the circuit court, but it did not. Even so, Enos argued the errors were "not fatal to the court's conclusions" because nowhere did the court find that Enos was not in possession; to the contrary, ruling that the violation was de minimis presumes that he was in possession.

_____

[9]    In addition to the discrepancy in the five-foot distance noted above, the report also indicated that Officer Moniz saw Enos "lying behind a cardboard box," not inside it. (Emphasis added.)

14

In a summary disposition order, the ICA concluded that FOFs 1 and 3 were clearly erroneous because they were not supported by any evidence in the record. The ICA could not conclude that these errors were harmless because, although the circuit court "made other findings relevant to the issue of illicit use," the circuit court included and relied on the erroneous findings in its decision to grant the Motion to Dismiss.

However, the ICA agreed with the circuit court's conclusion that Criminal Trespass onto State Lands "is not the harm sought to be prevented by HRS § 712-1243." The ICA disapproved of the statutory interpretation by the circuit court; according to the ICA, Criminal Trespass onto State Lands is literally a "property crime" under the HRS. However, the ICA held that Criminal Trespass onto State Lands does not fall within the "type of property crimes actually associated with dangerous drug use" that motivated the legislature to criminalize drug possession. The ICA pointed to Act 161 of 2002, which amended § 712-1243, and noted that while "nondrug offenses" associated with drug use were of concern to the legislature, the enumerated examples ("thefts, burglaries, robberies, assaults, rapes, and homicides") were markedly different from Criminal Trespass onto State Lands. 2002 Haw. Sess. Laws Act 161, § 1 at 569. Accordingly, the ICA held that while the circuit court was wrong to say that Criminal Trespass onto State Lands was not a property

15

crime, it correctly concluded that it was not a property crime "consistent with the legislative intent of criminalizing the possession of any amount of illicit drugs."

However, because the circuit court "exercised its discretion, in part, based on erroneous findings," the ICA vacated the Order and remanded to the circuit court "to redetermine the issue of whether Enos's conduct constituted a de minimis violation."

## D. Supreme Court Proceedings

Enos urges us to reverse the ICA's vacatur of the order dismissing the charge against him. He claims that while FOFs 1 and 3 were clearly erroneous, any error was harmless. He also argues that while the ICA was right to affirm the circuit court with respect to the "property crime" issue, "it gravely erred in holding that the court had 'wrongly concluded' that Criminal Trespass onto State Lands is not a property crime." Finally, Enos claims that the ICA gravely erred in holding that the circuit court abused its discretion.

## II. STANDARDS OF REVIEW

## A. Statutory Interpretation

"Questions of statutory interpretation are questions of law to be reviewed <u>de novo</u> under the right/wrong standard." <u>Nakamoto v. Kawauchi</u>, 142 Hawaiʻi 259, 268, 418 P.3d 600, 609 (2018).

16

**B.   Findings of Fact**

Findings of fact "are subject to the clearly erroneous standard of review.  A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with a definite and firm conviction that a mistake has been committed."  State v. Rapozo, 123 Hawai'i 329, 336, 235 P.3d 325, 332 (2010) (quoting State v. Gabalis, 83 Hawai'i 40, 46, 924 P.2d 534, 540 (1996)).

Even if a trial court's finding is found to be clearly erroneous, it may nonetheless be harmless.  For clear error to be reversible, it must be shown that the erroneous finding "affected the outcome of the trial court's decision."  Chakta v. County of Maui, 109 Hawai'i 198, 219 (2005) (citing HRS § 641-2); see also Torres v. Torres, 100 Hawai'i 397, 412 (2002).

**C.   Motion to Dismiss for De Minimis Violation**

The dismissal of a prosecution for a de minimis infraction is reviewed for abuse of discretion. State v. Pacquing, 129 Hawai'i 172, 180, 297 P.3d 188, 196 (2013).  "A court abuses its discretion if it clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Rapozo, 123 Hawai'i at 336, 235 P.3d at 332 (quoting State v. Oughterson, 99 Hawai'i 244, 253, 54 P.3d 415, 424 (2002)).

### III.  DISCUSSION

The circuit court did not abuse its discretion when it

dismissed the charge against Enos as de minimis. While the ICA correctly analyzed the Criminal Trespass onto State Lands statute, we disagree that the challenged findings of fact, while clearly erroneous, were not harmless. Moreover, we conclude that it was within the circuit court's discretion to dismiss the charge as de minimis because it considered the relevant attendant circumstances and reasonably concluded that Enos's conduct did not "warrant the condemnation of a conviction." HRS § 702-236.

A. **Criminal Trespass onto State Lands Does Not Fall Within the Harm Sought to Be Prevented by the Felony Drug Statute**

A court may dismiss a charge as de minimis if, in light of the attendant circumstances, it finds that the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation or conviction[.]" HRS § 702-236(1)(b); see also State v. Park, 55 Haw. 610, 617, 525 P.2d 586, 591 (1974). Dismissing a charge as de minimis falls squarely within "the sound discretion of the trial court." Viernes, 92 Hawai'i at 133, 988 P.2d at 198 (citation omitted). The defendant bears the burden of proof in a de minimis motion. State v. Oughterson, 99 Hawai'i at 256, 54 P.3d at 427.

Throughout the proceedings, the parties disagreed over whether Criminal Trespass onto State Lands was a "property crime" and argued over the proper statutory classification for the law. This argument stemmed from our previous descriptions of the "harm

18

or evil," HRS § 702-236(1)(b), the legislature sought to prevent by criminalizing possession of any amount of a dangerous drug, which included combating "property and violent crimes." Viernes, 92 Hawaiʻi at 134, 988 P.2d at 199. Since Enos was committing a property crime when he was arrested, the State argued that his conduct of drug possession in fact caused the "harm or evil sought to be prevented by" HRS § 712-1243, Promotion of a Dangerous Drug in the Third Degree.

At the outset, the circuit court's interpretation of the Criminal Trespass onto State Lands statute was incorrect. The circuit court concluded that, as a matter of statutory interpretation, Criminal Trespass onto State Lands is exempted from the "property crime" designation because this offense cannot "be used to establish a felony conviction" under the Habitual Property Crime law. HRS § 708-814.7(4). We agree with the State that this reasoning conflates the definition of a property crime with a particular subclass of property crimes that can support enhanced penalties under the habitual property crime statute. As the ICA correctly concluded, Criminal Trespass onto State Lands is by definition a "property crime," sentencing exclusions notwithstanding.

Nonetheless, the ICA was also correct to hold that the legislature was not concerned with Criminal Trespass onto State Lands when it criminalized drug possession. In turn, the fact that Enos was committing that offense when he was arrested does

19

not preclude a court from determining that his conduct was de minimis.  Framing the question as simply one of statutory interpretation, as the circuit court did and the State urged, elides the true issue.  The Criminal Trespass onto State Lands statute does not need to be inflexibly classified as a "property crime" or not, nor does committing a property crime determine whether Enos's conduct cannot be considered de minimis.  Rather, the operative question is whether the defendant's conduct (which, here, involved Criminal Trespass onto State Lands) falls within "the harm or evil sought to be prevented" by the drug statute.  HRS § 702-236(1)(b).  The ICA concluded that the legislature was not concerned with property crimes as a class, but "with the <u>type</u> of property crime <u>actually associated</u> with dangerous drug use."  It so concluded based on legislative history that pinpointed specific kinds of crimes that posed a particular concern.

A review of the legislative history confirms that Criminal Trespass onto State Lands does not fall within the ambit of the legislature's concerns over drug crimes.  The language "property and violent crimes," which, as mentioned, we have adopted in describing the legislative intent in criminalizing drug possession, <u>see, e.g.</u>, <u>Viernes</u>, 92 Hawai'i at 134, 988 P.2d at 199, traces to the 1996 amendments to HRS § 712-1243.  The House Standing Committee Report stated an intent to penalize possession and distribution of drugs, and methamphetamine in particular, in order "to counter increased property and violent

20

crimes associated with the use of this dangerous drug." H. Stand. Comm. Rep. No. 734-96, in 1996 House Journal, at 1312; see also S. Stand. Comm. Rep. No. 2597, in 1996 Senate Journal, at 1212 ("The proliferation of drugs has also had a direct and significant impact on the increase in and severity of both violent and property crimes.").

However, HRS § 712-1243 has been amended twice more since 1996, in 2002 and 2004, and those Acts put a finer point on the kinds of crimes associated with drug use that concerned the legislature. Act 161 of 2002, cited by the ICA and intended to lessen penalties for nonviolent drug offenders, noted that "a large percentage of persons who are arrested for both drug and nondrug offenses (such as thefts, burglaries, robberies, assaults, rapes, and homicides) test positive for recent drug use." 2002 Haw. Sess. Laws Act 161, § 1 at 569. In addition, the legislature found:

> Adults who are under the influence of a controlled substance or alcohol commit many offenses to raise revenue to support their habits. Some mind and mood altering drugs induce criminal and often violent behavior . . . . Some drugs may also reduce an offender's ability to empathize with a potential victim, resulting in episodes of seemingly mindless violence.
>
> Finally, some crimes, including crimes of violence, are committed in the normal course of conducting illicit drug businesses and enterprises. These include strong-arm robberies and "rip-offs," violent retaliations for these offenses, and efforts to protect markets and "turf" by means of intimidation and terrorism directed against "would be" competitors and drug purchasers who patronize competing drug distributors.

2002 Haw. Sess. Laws Act 161, § 1 at 569 (emphases added).

21

The 2004 amendments responded specifically to methamphetamine addiction, and while the Act's language focused less on drug-related crimes than the 2002 amendments, the Preamble stated its purpose as, in relevant part, "deter[ring] the proliferation of drug trafficking and importation into Hawaii" and "expand[ing] access to treatment for first time <u>nonviolent</u> drug offenders."  2004 Haw. Sess. Laws Act 44, § 1 at 205 (emphasis added).

Thus, the most recent amendments to HRS § 712-1243 indicate that the legislature's concern with drug-related crimes has focused primarily on violence.  The history of both the 2002 and 2004 amendments evince the legislature's intent to be more lenient on nonviolent offenders while preventing and punishing crimes of violence.  To the extent the legislature was motivated by preventing property crimes, it was concerned with, as the ICA put it, "the <u>type</u> of property crimes <u>actually associated</u> with dangerous drug use," such as theft, burglary, and robbery; not simply property crimes as a category.[10]

Accordingly, the ICA was correct when it concluded that deterring Criminal Trespass onto State Lands, a "property crime" to be sure, did not motivate the legislature in passing and subsequently amending § 712-1243.  In turn, Enos could commit the

---

[10]  To be clear, committing a property crime associated with dangerous drug use - i.e., the kind of property crime that motivated the legislature to criminalize possession of any amount of a dangerous drug - does not foreclose de minimis dismissal.  The attendant circumstances must be evaluated in each individual case to determine whether the defendant caused or threatened "the harm or evil sought to be prevented" by the statute.  HRS § 702-236(1)(b).

property crime of Criminal Trespass onto State Lands while still warranting de minimis dismissal of the drug possession charge. In other words, the fact that Enos was committing the property offense of Criminal Trespass onto State Lands does not mean that his conduct "actually cause[d] or threaten[ed] the harm of evil sought to be prevented" by § 712-1243, as the State urged. HRS § 702-236(1)(b).

## B.    The Clearly Erroneous Findings of Fact Were Harmless

Given that the ICA's analysis of the Criminal Trespass onto State Lands offense presents no errors of law, we must next turn to the errors of fact. The ICA agreed with the State that "the circuit court clearly erred in finding that Enos was lying 'inside' the cardboard box and that the pipe and packet were located 'five feet away' from Enos." Enos concedes that these points were clearly erroneous. The police report - evidence to which the parties stipulated - stated that the officer was five feet away from Enos, that the pipe was "near" Enos, and that Enos was lying behind, not in, the box; these facts were not controverted. However, Enos asserts that the ICA erred insofar as it "[could not] conclude that the circuit court's inclusion of and reliance on FOFs 1 and 3 was harmless error."

We agree with Enos that these errors were harmless. While the ICA cited the "inclusion of and reliance on" the erroneous findings as its basis to remand the case, an analysis of the relevance of the erroneous findings shows that neither

23

error affected the circuit court's decision to dismiss. First, Enos's location relative to the cardboard box has no bearing at all on the offense for which he was charged. His position "behind" rather than "in" the cardboard box makes his conduct of drug possession neither more nor less "harmful" or "evil" per the de minimis statute, and so this erroneous finding of fact is harmless.

That leaves the erroneous finding that the pipe and pouch were five feet away from Enos when discovered. The State argued that this fact bore directly on the matter of possession. But Enos responded that in finding his conduct to be de minimis under the drug possession statute, the circuit court must have "presumed that he was in possession of the items." In other words, for a court to find that an offense is de minimis, it must inherently find that all of the elements of the offense are met. Per Enos, this means that the distance between him and the paraphernalia is inconsequential, because the court must have necessarily concluded he possessed them, at least constructively, in order to determine that his conduct was de minimis.

We agree with Enos that the distance does not matter to the issue of possession because the circuit court found, as it must have, that the possession element was met. First, the circuit court concluded explicitly that Enos had possessed the

drugs in its COLs.[11]  Even if it had not, as we noted in Rapozo, the de minimis statute derives from the Model Penal Code, the commentary to which states that the de minimis statute "authorizes courts to exercise a power inherent in other agencies of criminal justice to ignore merely technical violations of law," and "[a]melioration of the letter of the law is both necessary and inevitable[.]"  123 Hawaiʻi at 337, 988 P.2d at 333 (quoting 1 American Law Institute, Model Penal Code and Commentaries, § 2.12 at 399, 404 (1962)) (emphases added).  This context shows that a violation of the letter of the law is intrinsic to dismissing a charge as de minimis, and violation of the letter of HRS § 712-1243 requires possession.  Thus, the five-foot distance does not bear on the issue of possession in this case, because the dismissal of the charge as de minimis inherently required the circuit court to find that the possession element was met.  As such, the ICA erred in concluding that the plainly erroneous findings of fact were not harmless.

**C.    The Circuit Court Was Within its Discretion to Grant the De Minimis Motion.**

We must finally consider whether the circuit court abused its discretion in granting the de minimis motion.[12]  We hold that it did not.  The circuit court did not "clearly exceed[ ] the bounds of reason or disregard[ ] rules or

---

[11]    The pertinent COL read: "Defendant's conduct of possessing a very small amount of the drug . . . ." (Emphasis added.)

[12]    The ICA did not reach this question and remanded the case to the circuit court in light of the clear errors of fact.

25

principles of law or practice to the substantial detriment of" the State when it concluded that Enos's conduct did not "cause or threaten the harm or evil sought to be prevented by" Promotion of a Dangerous Drug in the Third Degree. Rapozo, 123 Hawai'i at 336, 235 P.3d at 332; HRS § 702-236(1)(b).

In Fukagawa, we described Hawai'i's drug laws as "intended to control the use and sale of illicit drugs . . . and to address related social harms, including property and violent crimes." 100 Hawai'i at 504, 60 P.3d at 905. As discussed above, a review of the development of the Hawai'i drug law framework since Fukagawa indicates that the "harm or evil sought to be prevented by" Promotion of a Dangerous Drug in the Third Degree includes deterring drug-related crimes, and violent crimes in particular, while easing penalties on low-level, nonviolent offenders.

Although Promotion of a Dangerous Drug in the Third Degree on its face applies explicitly to drugs in any amount, "where a literal application of HRS § 712-1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702-236 . . . may be applicable to mitigate this result." Vance, 61 Haw. at 307, 61 P.2d at 944; see also Fukagawa, 100 Hawai'i at 504, 60 P.3d at 905. The quantity possessed of a dangerous drug is "microscopic" or "infinitesimal," Vance, 61 Haw. at 307, 602 P.2d at 944, and de minimis dismissal is warranted if the amount could not "produce a

26

pharmacological or physiological effect." Fukagawa, 100 Hawaiʻi at 506, 60 P.3d at 907 (citing State v. Hironaka, 99 Hawaiʻi 198, 209, 53 P.3d 807, 817 (2002); State v. Balanza, 92 Hawaiʻi 279, 283-85, 1 P.3d 281, 285-87 (2000)).

Even so, we have long insisted that "quantity is only one of the surrounding circumstances a court must consider." Id. at 505, 60 P.3d at 906. "[B]efore [the de minimis statute] can be properly applied in a criminal case, all of the relevant facts bearing upon the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge." Park, 55 Hawaiʻi at 616, 525 P.2d at 591. Possession of an amount of drugs capable of producing a "pharmacological or physiological effect" may nonetheless warrant dismissal as de minimis if the amount possessed approaches "infinitesimal" - which is to say, a very small amount - and the other attendant circumstances indicate that the defendant "did not cause or threaten the harm or evil sought to be prevented by the law defining the offense." Vance, 61 Hawaiʻi at 307, 602 P.2d at 944; HRS § 702-236(1)(b); see also Viernes, 92 Hawaiʻi at 134, 988 P.2d at 199. In sum, Fukagawa presented the court's task in considering a de minimis motion on a drug charge as follows:

> Before dismissing a charge as a de minimis infraction, a court must consider the amount of drugs possessed and the surrounding circumstances to determine if the defendant's conduct caused or threatened the harm or evil sought to be prevented by the law defining the offense sufficiently to warrant the condemnation of

27

conviction.

Fukagawa, 100 Hawai'i at 505, 60 P.3d at 905 (emphasis added).

In the instant case, the circuit court concluded, based on competing expert testimony, that the aggregate .005 grams of substance containing methamphetamine could produce a "physiological or euphoric effect" and therefore "[was] not a de minimis amount." However, it nonetheless decided to dismiss the charge. While not de minimis, the circuit court concluded that the amount possessed was "very small," and the other attendant circumstances supported dismissal. In particular, the circuit court found that: "no other paraphernalia was found on [Enos's] person"; Enos "was not engaged in or suspected of engaging in any violent activity"; he was trespassing onto state lands, but that offense does fall within the ambit of the legislature's concern with respect to drug possession and property crimes; and the trespassing offense occurred because he was homeless and "had nowhere else to go."

Considering "the nature of the conduct alleged and the nature of the attendant circumstances," including quantity, it was not an abuse of discretion for the circuit court to conclude that Enos's conduct "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]" HRS § 702-236(1). None of the attendant circumstances indicated that Enos "cause[d] or threaten[ed]" any

of the "harms or evils" the legislature contemplated in passing and amending § 712-1243.  Most importantly, Enos falls squarely into the category of nonviolent, low-level offender that the statute seeks to treat rather than incarcerate.  While this alone does not change the fact that Enos violated § 712-1243 and thereby committed a felony, under these circumstances, including the "very small amount" of substance containing methamphetamine found, we hold that the circuit court did not abuse its discretion in dismissing the charge against Enos.  See Rapozo, 123 Hawaiʻi at 332, 235 P.3d at 328 ("A court abuses its discretion if it clearly exceeded the bounds of reason or disregarded rules or principles of law or practice[.]" (citation omitted)).

To be clear, the quantity of drugs possessed remains a critical consideration when deciding a de minimis motion on a drug charge.  It would be an abuse of discretion, for instance, if a court gave no consideration at all to the quantity possessed.  Cf. Fukagawa, 100 Hawaiʻi at 504–05, 60 P.3d at 905–06.  This would run counter to the legislature's intent to criminalize possession of "any dangerous drug in any amount."  HRS § 712-1243 (emphasis added).  We only hold in the instant case that the quantity possessed by a defendant may pass the threshold into an amount capable of "produc[ing] a pharmacological or physiological effect" without precluding a court from dismissing a charge as de minimis.  Fukagawa, 100

29

Hawaiʻi at 506, 60 P.3d at 906. As here, if the amount possessed is capable of producing such an effect but is nonetheless very small, and if the other attendant circumstances weigh in favor of dismissal, it is within a court's sound discretion to dismiss the charge as de minimis.

Moreover, even though the circuit court did not credit the defendant's argument that the substance containing methamphetamine was not tested for purity, the form of the drug and the place it was found -residue in a pipe and a bag - bears on the de minimis analysis. The legislature decriminalized paraphernalia possession in 2017. See HRS § 329-43.5 (Supp. 2017). In the Act making paraphernalia possession a violation, the legislature found "that state funds are better spent on community programs and rehabilitation of nonviolent, low-risk drug offenders[.]" Act 72 § 1, 2017 Session Laws of Hawaiʻi at 367. This change puts the legislative intent behind the Hawaiʻi drug scheme into sharper relief: possessing paraphernalia is not a "harm or evil" that "warrants the condemnation of a conviction," and certainly not a felony conviction. HRS § 702-236(1)(b). Enos was found with mere milligrams of residue of unknown purity, which was recovered from two pieces of paraphernalia, a pipe and a virtually-empty bag.[13] During the

---

[13] Drug paraphernalia is defined in HRS § 329-1 (Supp. 2016) as

all equipment, products, and materials of any kind which are used, primarily intended for use, or primarily designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting,

(continued...)

hearing on the Motion before the circuit court, Enos asserted that the charge was "attempting to pigeonhole what should be paraphernalia drugs, which is a violation, into a felony statute."  While the circuit court did not rely on this assertion in its Order, "it is well-settled that 'an appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance.'"  Fukagawa, 100 Hawaiʻi at 506 (quoting State v. Dow, 96 Hawaiʻi 320, 326, 30 P.3d 96, 932 (2001)).  Thus, we may consider the fact that the "very small amount" of methamphetamine that Enos possessed was recovered from paraphernalia, possession of which is only a violation, in reaching our conclusion that the circuit court did not abuse its discretion.  This attendant circumstance relates directly to the "harm or evil" of Promotion of a Dangerous Drug in the Third Degree, which the legislature could not have intended to be used to subvert its changes to the paraphernalia statute.

From the above analysis, we conclude that the circuit court did not "clearly exceed the bounds of reason" nor did it "disregard rules or principles of law" when it granted Enos's Motion.  Rapozo, 123 Hawaiʻi at 332, 60 P.3d at 328.

---

[13](...continued)
> producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of [the Uniformed Controlled Substances Act, HRS Chapter 329.]

This definition includes: "envelopes[ ] and other containers used, primarily intended for use, or primarily designed for use in packaging small quantities of controlled substances" and "objects used . . . in inhaling . . . methamphetamine into the human body" like a "glass . . . pipe."  HRS § 329-1.

Accordingly, the circuit court did not abuse its discretion in dismissing the charge against Enos as de minimis.

## IV. CONCLUSION

The ICA correctly analyzed the Criminal Trespass onto State Lands statute and its relation to the de minimis motion brought by Enos in this case. However, the ICA erred by holding that the clearly erroneous findings of fact were not harmless. The circuit court did not abuse its discretion by dismissing the charge against Enos as de minimis. Thus, we reverse the June 28, 2019 judgment on appeal of the ICA.

Jon N. Ikenaga
for petitioner

Stephen K. Tsushima
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



32